ROSALIA CALCANO *v.* DAMARIS
CALCANO ET AL.
(SC 16461)

Sullivan, C. J., and Borden, Katz, Palmer and Zarella, Js.

Argued March 13—officially released July 31, 2001

*James O. Gaston*, for the appellant (plaintiff).

*James E. O'Donnell,* for the appellee (named defendant).

*Opinion*

BORDEN, J. The plaintiff, Rosalia Calcano, appeals[1] from the judgment of the trial court, rendered after a jury trial, against the named defendant, Damaris Calcano.[2] The plaintiff claims that the trial court improperly admitted into evidence certain office notes and a transcription of the notes prepared by the plaintiff's chiropractor, Douglas M. Keeney. Specifically, the plaintiff claims that: (1) the office notes and transcription were inadmissible hearsay evidence to which the business records exception; General Statutes § 52-180;[3] did not

---

[1] The plaintiff appealed from the judgment of the trial court to the Appellate Court, and we transferred the appeal to this court pursuant to Practice Book § 65-1 and General Statutes § 51-199 (c).

[2] The Asplundh Tree Expert Company (Asplundh Tree) and one of its employees, Richard A. Thomas, were also defendants in the underlying action. A judgment was rendered in favor of those defendants, neither of whom is involved in this appeal. References throughout this opinion to the defendant are to Damaris Calcano only.

[3] General Statutes § 52-180 provides: "(a) Any writing or record, whether in the form of an entry in a book or otherwise, made as a memorandum or record of any act, transaction, occurrence or event, shall be admissible as evidence of the act, transaction, occurrence or event, if the trial judge finds that it was made in the regular course of any business, and that it was the regular course of the business to make the writing or record at the time of the act, transaction, occurrence or event or within a reasonable time thereafter.

"(b) The writing or record shall not be rendered inadmissible by (1) a party's failure to produce as witnesses the person or persons who made the writing or record, or who have personal knowledge of the act, transaction, occurrence or event recorded or (2) the party's failure to show that such persons are unavailable as witnesses. Either of such facts and all other circumstances of the making of the writing or record, including lack of personal knowledge by the entrant or maker, may be shown to affect the weight of the evidence, but not to affect its admissibility.

"(c) Except as provided in the Freedom of Information Act, as defined in section 1-200, if any person in the regular course of business has kept or recorded any memorandum, writing, entry, print, representation or combination thereof, of any act, transaction, occurrence or event, and in the regular course of business has caused any or all of them to be recorded, copied or reproduced by any photographic, photostatic, microfilm, microcard, miniature photographic or other process which accurately reproduces

apply; (2) the notes and transcription did not satisfy the admissibility requirements of General Statutes § 52-174[4] pertaining to medical records and reports of a

or forms a durable medium for so reproducing the original, the original may be destroyed in the regular course of business unless its preservation is otherwise required by statute. The reproduction, when satisfactorily identified, shall be as admissible in evidence as the original in any judicial or administrative proceeding, whether the original is in existence or not, and an enlargement or facsimile of the reproduction shall be likewise admissible in evidence if the original reproduction is in existence and available for inspection under direction of court. The introduction of a reproduced record, enlargement or facsimile shall not preclude admission of the original.

"(d) The term 'business' shall include business, profession, occupation and calling of every kind."

Although the legislature made a technical change to § 52-180 (c) since 1993, the time of the accident in this case, the statute remains substantively the same. References in this opinion to § 52-180 are to the current revision.

[4] General Statutes § 52-174 provides: "(a) In all actions for the recovery of damages for personal injuries or death, (1) if a physician, dentist, chiropractor, natureopath, physical therapist, podiatrist, psychologist, emergency medical technician, optometrist, professional engineer or land surveyor has died prior to the trial of the action, or (2) if a physician, dentist, chiropractor, natureopath, physical therapist, podiatrist, psychologist, emergency medical technician, optometrist, professional engineer or land surveyor is physically or mentally disabled at the time of the trial of the action to such an extent that such person is no longer actively engaged in the practice of the profession, the party desiring to offer into evidence the written records and reports of the physician, dentist, chiropractor, natureopath, physical therapist, podiatrist, psychologist, emergency medical technician or optometrist concerning the patient who suffered the injuries or death and the reports and scale drawings of the professional engineer or land surveyor concerning matter relevant to the circumstances under which the injuries or death was sustained shall apply to the court in which the action is pending for permission to introduce the evidence. Notice of the application shall be served on the adverse party in the same manner as any other pleading. The court to which the application is made shall determine whether the person is disabled to the extent that the person cannot testify in person in the action. Upon the court finding that the person is so disabled, the matters shall be admissible in evidence as a business entry in accordance with the provisions of section 52-180 when offered by any party in the trial of the action.

"(b) In all actions for the recovery of damages for personal injuries or death, pending on October 1, 1977, or brought thereafter, and in all court proceedings in family relations matters, as defined in section 46b-1, or in the Family Support Magistrate Division, pending on October 1, 1998, or brought thereafter, any party offering in evidence a signed report and bill for treatment of any treating physician, dentist, chiropractor, natureopath,

deceased expert witness; (3) the transcription contained double hearsay; (4) the transcription was secured without medical authorization in violation of General Statutes § 52-146o[5] prohibiting the disclosure

physical therapist, podiatrist, psychologist, emergency medical technician or optometrist may have the report and bill admitted into evidence as a business entry and it shall be presumed that the signature on the report is that of the treating physician, dentist, chiropractor, natureopath, physical therapist, podiatrist, psychologist, emergency medical technician or optometrist and that the report and bill were made in the ordinary course of business. The use of any such report or bill in lieu of the testimony of such treating physician, dentist, chiropractor, natureopath, physical therapist, podiatrist, psychologist, emergency medical technician or optometrist shall not give rise to any adverse inference concerning the testimony or lack of testimony of such treating physician, dentist, chiropractor, natureopath, physical therapist, podiatrist, psychologist, emergency medical technician or optometrist.

"(c) This section shall not be construed as prohibiting either party or the court from calling the treating physician, dentist, chiropractor, natureopath, physical therapist, podiatrist, psychologist, emergency medical technician or optometrist as a witness."

Although the legislature made technical changes to § 52-174 (c) since 1993, the time of the accident in this case, the statute remains substantively the same. References in this opinion to § 52-174 are to the current revision.

[5] General Statutes § 52-146o provides: "(a) Except as provided in sections 52-146c to 52-146j, inclusive, and subsection (b) of this section, in any civil action or any proceeding preliminary thereto or in any probate, legislative or administrative proceeding, a physician or surgeon, as defined in subsection (b) of section 20-7b, shall not disclose (1) any communication made to him by, or any information obtained by him from, a patient or the conservator or guardian of a patient with respect to any actual or supposed physical or mental disease or disorder or (2) any information obtained by personal examination of a patient, unless the patient or his authorized representative explicitly consents to such disclosure.

"(b) Consent of the patient or his authorized representative shall not be required for the disclosure of such communication or information (1) pursuant to any statute or regulation of any state agency or the rules of court, (2) by a physician, surgeon or other licensed health care provider against whom a claim has been made, or there is a reasonable belief will be made, in such action or proceeding, to his attorney or professional liability insurer or such insurer's agent for use in the defense of such action or proceeding, (3) to the Commissioner of Public Health for records of a patient of a physician, surgeon or health care provider in connection with an investigation of a complaint, if such records are related to the complaint, or (4) if child abuse, abuse of an elderly individual, abuse of an individual who is physically disabled or incompetent or abuse of an individual with mental

of a patient's communications or information by a physician; and (5) the transcription was obtained through an ex parte communication between the defendant and Keeney. We affirm the judgment of the trial court.

The plaintiff brought this negligence action against the defendant, her daughter, for injuries that the plaintiff had sustained as a result of a February, 1993 collision in East Haven between an automobile operated by the defendant, in which the plaintiff was a passenger, and a truck owned by Asplundh Tree and operated by Richard A. Thomas. The jury rendered a verdict in favor of the plaintiff, and awarded her $6657.50 in economic damages and $6000 in noneconomic damages. The plaintiff moved to set aside the verdict and for a new trial as to the issue of damages. The trial court denied these motions and rendered judgment in accordance with the verdict. This appeal followed.

The jury reasonably could have found the following facts. On February 3, 1993, the defendant was driving the plaintiff home from an appointment at Keeney's office. As they were approaching the intersection of Forbes Place and Kimberley Avenue from the south, a truck known as a tree trimmer, which was operated by Thomas, was approaching the intersection from the east. At that intersection there was a three-way stop sign for all traffic except that approaching from the north. After coming to a complete stop, Thomas slowly proceeded through the intersection. The defendant failed to stop, however, and proceeded through the intersection striking the Asplundh Tree vehicle. Although neither the defendant nor Thomas was injured, the plaintiff was taken by ambulance to Yale-New Haven Hospital for examination. She was treated

retardation is known or in good faith suspected."

Although the legislature made technical changes to § 52-146o since 1993, the time of the accident in this case, the statute remains substantively the same. References in this opinion to § 52-146o are to the current revision.

for head, neck and back pain, and was released that same day.

On or about February 15, 1993, the plaintiff returned to Keeney, who believed that the plaintiff was in need of a cervical support and lumbar support. On March 1, 1993, to aid in her recovery, the plaintiff began treatment at the Functional Restoration Center (center) in Fairfield. She enrolled in the center's enhancement program in the hopes of alleviating her neck, shoulder and lower back pain. Thereafter, the plaintiff exacerbated a previous knee problem, and she chose to discontinue treatment at the center in order to begin treatment on her knee. The plaintiff consulted with Eric J. Katz, an orthopedic surgeon, on four occasions, the last of which took place in July, 1993. In 1996, the plaintiff moved to Florida where, sometime before April, 1998, she sought additional treatment for her injuries.

In November, 1993, the plaintiff brought this negligence action seeking monetary damages for the injuries that she had suffered. An extensive discovery process ensued. The defendant sought any information that would tend to show that the plaintiff had suffered any preexisting injuries. In the defendant's standard request for disclosure and production, the defendant sought, among other items, reports from any doctors or other care providers that related to any treatment that the plaintiff had received for injuries arising from this accident or from any similar injuries within the previous ten years. Among the records the plaintiff disclosed were those from the center, including a report from Joel S. Feigenson, a physician, which contained a reference to a prior history of lower back pain stemming from "an accident eight years ago."[6] The report stated that the plaintiff had been treated by Keeney. When then

---

[6] This report was dated February 24, 1993, thus placing the time of the previous accident sometime around 1985.

counsel for the defendant, Ida H. Rodriguez,[7] inquired about the existence of any treatment notes regarding the earlier accident, the plaintiff's attorney, James O. Gaston, agreed to contact Keeney and send to Rodriguez any notes that Keeney had provided.

On September 14, 1995, Gaston sent a letter to Keeney's office requesting "any medical notes, reports and records" of all services rendered to the plaintiff. On September 18, 1995, Keeney sent to the plaintiff two pages of partly indecipherable handwritten notes concerning the plaintiff. Accompanying the notes was a transmittal letter from Keeney addressed to Gaston, which stated that, because the notes were written with "a system of abbreviations, coding and short-hand," they would be "totally unintelligible to anyone except [Keeney] . . . ." Keeney therefore offered to Gaston to "send a narrative report" upon the receipt of $125. On January 23, 1996, Gaston sent a copy of Keeney's transmittal letter to O'Donnell, along with a copy of the notes.[8]

In order to secure a transcription, O'Donnell telephoned Keeney to confirm the proper mailing address,

---

[7] During this time period, the defendant was represented by Rodriguez. In the fall of 1995, attorney James E. O'Donnell filed an appearance on behalf of the defendant and has represented the defendant since then.

[8] The text of Gaston's letter to O'Donnell provided: "Please find enclosed copies of Dr. Keeney's office notes with respect to the above case. If you have any questions, please do not hesitate to contact me directly." The trial court specifically found that Gaston also had forwarded Keeney's transmittal letter to the defendant's attorney. Gaston claims that he forwarded the letter to Rodriguez. O'Donnell testified that he did not recall how he received the letter. Our conclusion does not depend on how O'Donnell came into possession of the transmittal letter. Gaston concedes that he forwarded both the notes and the transmittal letter to one of the defendant's attorneys, either Rodriguez or O'Donnell. Moreover, Gaston makes no claim that he instructed Rodriguez not to get a transcription, and Rodriguez would have had to turn over all of her documents to O'Donnell once he assumed the defense. Thus, O'Donnell was rightfully in possession of the transmittal letter.

and then sent a letter, which was dated June 28, 1996, requesting a transcription of the office notes, along with a check for $125. O'Donnell requested that Keeney, in addition to transcribing the notes, " 'spell out' " any abbreviations developed by him or that commonly were used within the medical community. In July, 1996, Keeney sent a three page transcription to O'Donnell.

At trial, the issue of whether the plaintiff had any preexisting injuries was sharply contested, with the notes and transcription from Keeney potentially serving an important function in that regard. The plaintiff testified that, prior to the incident in the present case, the only other car accident in which she had been involved was "about twenty years ago." She also testified that she had no recollection of falling down a flight of stairs in November, 1992. Keeney's transcription states, however, that: "She did good until 11-92. Fell down a flight of stairs." Furthermore, the transcription covers visits beginning in June, 1990. The notes from this visit state: "Now, swollen right shoulder and neck." When read in conjunction with the February 24, 1993 report from the center, which mentioned an accident eight years earlier and subsequent treatment by Keeney, a jury reasonably could have chosen to discredit the plaintiff's version of events. Thus, the admissibility of Keeney's transcription became an important issue at trial.

Because Keeney had passed away before the commencement of trial, the defendant sought to admit Keeney's notes pursuant to §§ 52-174 and 52-180.[9] In order to satisfy the requirements of § 52-180, the defendant offered the testimony of Keeney's widow, Kathleen Keeney, and Keeney's office manager, Judith Travaglino. Kathleen Keeney testified that Keeney's usual practice was to keep handwritten records regarding each patient in separate files, which reflected the treatment

---

[9] See footnotes 3 and 4 of this opinion for the texts of §§ 52-174 and 52-180.

provided for or other information obtained from the patient. She identified the handwriting in the notes at issue as Keeney's. She further testified that it was part of his normal practice to make a typewritten transcription of his handwritten notes upon request, and that he normally did this transcription himself, at home on his personal computer. Travaglino testified that she had worked for Keeney for approximately eight years and also was familiar with his normal record keeping practices. She corroborated Kathleen Keeney's testimony concerning his note-taking and transcription practices. Travaglino also testified that she recalled Keeney handing her the transcription of the plaintiff's record and that she subsequently mailed it to O'Donnell. Neither Travaglino nor Kathleen Keeney, however, observed Keeney write his original set of notes or later transcribe those notes and, thus, they were unable to testify as to precisely when the notes and the transcription had been made.

On the basis of the testimony of Kathleen Keeney and Travaglino, the defendant sought to enter into evidence Keeney's handwritten notes concerning the plaintiff and the typed transcription of those notes. The plaintiff objected on the grounds that both items were hearsay, and did not fall within either the business records exception of § 52-180 or within the medical records and reports exception of § 52-174. Additionally, the plaintiff argued that the transcription had been obtained through ex parte communications and in violation of § 52-146o; see footnote 5 of this opinion.

The trial court overruled the plaintiff's objections, ruling that both items were admissible under §§ 52-174 and 52-180. The trial court stated: "I also think that the sending of the letter by Mr. Gaston to Mr. O'Donnell's office from Dr. Keeney talking about getting the short-hand translated is an invitation to go get that information and he didn't ask for additional information. He

asked to get a transcription of the notes, so I'll allow the notes into evidence."

Before addressing the merits of the plaintiff's claims, we briefly set forth the standard by which we review the plaintiff's claims. "On appeal, a trial court's ruling as to the admissibility of evidence is accorded great deference . . . and we will reverse such a ruling only upon a showing of a clear abuse of discretion." (Citation omitted.) *Wagner* v. *Clark Equipment Co.*, 243 Conn. 168, 196, 700 A.2d 38 (1997).

I

The plaintiff first claims that the trial court improperly admitted Keeney's notes and transcription into evidence pursuant to § 52-180, which sets forth the business records exception to the hearsay rule. Specifically, the plaintiff argues that the notes and the transcription improperly were admitted pursuant to § 52-180 because the defendant was unable to show that either document had been made contemporaneously with or within a reasonable time after the treatment had been performed. We disagree.

"To be admissible under the business record exception to the hearsay rule, a trial court judge must find that the record satisfies each of the three conditions set forth in . . . § 52-180. The court must determine, before concluding that it is admissible, that the record was made in the regular course of business, that it was the regular course of such business to make such a record, and that it was made at the time of the act described in the report, or within a reasonable time thereafter. . . . In applying the business records exception, the statute [§ 52-180] should be liberally interpreted." (Citations omitted; internal quotation marks omitted.) *Bell Food Services, Inc.* v. *Sherbacow*, 217 Conn. 476, 485, 586 A.2d 1157 (1991). In part, this is because the statute recognizes the inherent trustwor-

thiness of documents created for business rather than litigation purposes. *Emhart Industries, Inc.* v. *Amalgamated Local Union 376, U.A.W.*, 190 Conn. 371, 388–89, 461 A.2d 422 (1983).

This court repeatedly has held that "[i]t is not necessary . . . that the witness have been the entrant himself or in the employ of the business when the entry was made." (Internal quotation marks omitted.) *Bell Food Services, Inc.* v. *Sherbacow*, supra, 217 Conn. 485. It is sufficient for a witness to testify that it was the regular business practice to create a document within a reasonable time after the occurrence of the event. This is sufficient to ensure that the document was created at the time when the event was fresh in the author's mind. *Emhart Industries, Inc.* v. *Amalgamated Local Union 376, U.A.W.*, supra, 190 Conn. 388–89. Notations in the document itself may satisfy the contemporaneous requirement. *River Dock & Pile, Inc.* v. *O & G Industries, Inc.*, 219 Conn. 787, 797, 595 A.2d 839 (1991).

We first consider the admissibility of the notes prepared by Keeney concerning the plaintiff's treatment. At trial, the defendant introduced Keeney's notes through Kathleen Keeney and Travaglino. Travaglino testified that Keeney was very orderly and that, as he performed whatever course of action he deemed necessary, he would "write down everything that he did to [the patients]." She further testified that Keeney took these notes either while he was meeting with a patient or shortly thereafter. We conclude that the trial court did not abuse its discretion in determining that the handwritten notes of Keeney were admissible under § 52-180.

To require the defendant to produce a witness that could testify from personal knowledge as to the specific time that a particular document was made would unduly constrain the use of the business records exception and directly contradict the liberal interpretation that this

court has accorded to § 52-180. Travaglino's testimony that Keeney ordinarily wrote down his notes while he treated the patient or shortly thereafter, coupled with an examination of the handwritten notes, which contained dates corresponding to each entry, was sufficient to support the trial court's conclusion that Keeney's notes satisfied the requirements of § 52-180.

We next consider the admissibility of the transcription of these notes. A comparison of the transcription to the original notes shows that the transcription closely tracks the writing contained in the notes, with each document containing the same dates and most of the same terms. Although Keeney, in his letter offering to translate his notes, describes his "system of abbreviations, coding and shorthand" as "totally unintelligible to anyone except [himself]," this is an exaggeration. Although some symbols or terms could have been explained only by Keeney, there are phrases in the notes that cannot be mistaken. For example, in an entry dated June 11, 1990, Keeney scrawled: "Can't wash hair, [indecipherable] raise arms, can't hook [indecipherable] (on uniform)." In the transcription of the notes, Keeney wrote: "Can't wash hair, can't hook bra (on uniform)." There are enough of these types of passages for the trial court to have assured itself that the latter document was merely a translation of the former document, which we have deemed admissible. Additionally, Kathleen Keeney and Travaglino testified that it had been a regular part of Keeney's practice to make typewritten transcriptions of his handwritten notes upon request, that he normally had done them on his home computer, and that he had been the only person who would do the transcribing. Travaglino further testified that she recalled Keeney handing her the plaintiff's transcription in order to mail it to O'Donnell, which she did, in July, 1996.

Taking into account these facts, and in keeping with the policy underlying the business records exception, namely, "that the essential hallmark of admissibility under § 52-180 is the trustworthiness of the document"; *Jefferson Garden Associates* v. *Greene*, 202 Conn. 128, 141, 520 A.2d 173 (1987); we conclude that it was not an abuse of discretion for the trial judge to have admitted into evidence the transcription of Keeney's notes. The fact that the transcription had not been prepared contemporaneously with the acts described in the report is not fatal to its admissibility, because it was merely a transcription of a document that itself had been prepared contemporaneously with the plaintiff's treatment. The transcription was not a completely independent document that was required, in and of itself, to satisfy the business records statute. Where, as here, the original document was admissible into evidence, and there was sufficient indication that the transcription contained substantially the same information, the transcription was also admissible.[10]

The plaintiff points out that, because Keeney had added parenthetical information in the transcription, which explained some of his symbols, it is impossible to know whether some information contained in the original notes had not been transcribed, and whether some information not contained in the original notes had been added to the transcription. Once a trial judge determines that a writing qualifies as a business record, however, it is the responsibility of the objecting party to make specific objections to those portions of the report that it wants redacted. *Aspiazu* v. *Orgera*, 205 Conn. 623, 628, 535 A.2d 338 (1987). It is not the trial court's responsibility to attempt to separate the admissible and inadmissible portions of the transcription.

[10] This conclusion, namely, that both the notes and transcription were admissible under § 52-180, renders it unnecessary to consider the plaintiff's contention that they were not admissible under § 52-174.

*Mucci* v. *LeMonte,* 157 Conn. 566, 571, 254 A.2d 879 (1969). In the present case, after making an initial objection to the admission of the transcription as a whole, the plaintiff made no further attempt to challenge the admissibility of specific portions of the writing. The plaintiff's argument, therefore, is unavailing.

The plaintiff further mentions, albeit in a cursory manner and for the first time in her reply brief, that Keeney's file contained two sets of handwritten notes, which contained much of the same information as the transcription, so that one cannot be sure which set of notes Keeney used to make the transcription. "It is a well established principle that arguments cannot be raised for the first time in a reply brief." (Internal quotation marks omitted.) *Ramos* v. *Vernon,* 254 Conn. 799, 843–44, 761 A.2d 705 (2000). "Our practice requires an appellant to raise claims of error in his original brief, so that the issue as framed by him can be fully responded to by the appellee in its brief, and so that we can have the full benefit of that written argument. Although the function of the appellant's reply brief is to respond to the arguments and authority presented in the appellee's brief, that function does not include raising an entirely new claim of error." (Internal quotation marks omitted.) *State* v. *Garvin,* 242 Conn. 296, 312, 699 A.2d 921 (1997). We therefore decline to consider the plaintiff's untimely claim.

II

The plaintiff also claims that the trial court improperly admitted the transcription because it contained double hearsay, thus placing the transcription outside any hearsay exception. Because the plaintiff failed in the trial court to articulate this objection at an appropriate time,[11] we decline to review this issue on appeal.

---

[11] The first time that the plaintiff properly articulated a double hearsay claim was in the motion to set aside the verdict. By then it was too late to cure any double hearsay defects, if there were any, by appropriate redactions.

"We have stated repeatedly that we ordinarily will not review an issue that has not been properly raised before the trial court. See, e.g., *Santopietro* v. *New Haven*, 239 Conn. 207, 219–20, 682 A.2d 106 (1996) (court 'not required to consider any claim that was not properly preserved in the trial court'); *Yale University* v. *Blumenthal*, 225 Conn. 32, 36 n.4, 621 A.2d 1304 (1993) (court declined to consider issues briefed on appeal but not raised at trial); see also Practice Book § 60-5 ('court shall not be bound to consider a claim unless it was distinctly raised at the trial or arose subsequent to the trial')." *Bell Atlantic Mobile, Inc.* v. *Dept. of Public Utility Control*, 253 Conn. 453, 485, 754 A.2d 128 (2000). We see no cause to deviate from that general policy here.

III

The plaintiff further claims that the trial court improperly admitted the transcription into evidence because it had been obtained without medical authorization in violation of § 52-146o. We disagree.

Section 52-146o (a) provides in relevant part: "Except as provided in sections 52-146c to 52-146j . . . a physician . . . shall not disclose . . . any information obtained by him from, a patient . . . unless the patient or his authorized representative *explicitly consents* to such disclosure." (Emphasis added.) After the trial court concluded that the transcription was admissible under §§ 52-174 and 52-180, the trial court added: "I also think that the sending of the letter by Mr. Gaston to Mr. O'Donnell's office from Dr. Keeney talking about getting the shorthand translated is an invitation to go get that information . . . ." In its memorandum of decision denying the plaintiff's motion to set aside the verdict, the trial court elaborated: "[T]here was no need for the plaintiff's attorney to send to the defendant's attorney the letter of transmittal requesting a check for $125 for

such a transcription unless it was contemplated that the defendant's attorney would undertake such action. . . . [T]he forwarding of the letter of transmittal constitutes an implied authorization to forward the check to the doctor . . . ." We agree, and conclude that the plaintiff's actions constituted not only an implied authorization, but explicit consent for the defendant to obtain a transcription of Keeney's notes. Where, as here, the plaintiff's own attorney in a personal injury case explicitly forwards this information and invitation to the adversary, as part of an informal discovery process, the plaintiff was bound by the conduct of her attorney, who was her "authorized representative"; General Statutes § 52-146o (a) (2); for such purposes. Accordingly, we conclude that the transcription was not obtained in violation of § 52-146o.

When Gaston forwarded a copy of Keeney's medical records with the transmittal letter from Keeney to Gaston offering to transcribe his notes upon the receipt of $125, Gaston, as the plaintiff's attorney, must be deemed to have expected the defendant to procure such a transcription. This is particularly so where the original notes were in Keeney's special coding and Gaston enclosed with the notes a letter explaining how to obtain a transcription of those notes. If Gaston, as the plaintiff's attorney, did not intend this letter to be considered authorization for the defendant to procure a transcription, as the person in the best position to control the use of the notes, he could have indicated as such in the letter.

The plaintiff also claims that even if the requirement of § 52-146o that the consent be "explicit" was satisfied, the statute also requires that the consent be written and signed. Without deciding whether the term "explicit

consent" requires such consent to be in writing,[12] we conclude that the letter to O'Donnell dated January 23, 1996, written and signed by the plaintiff's attorney and authorized representative for such purposes, constituted a sufficient writing under § 52-146o. Thus, the explicit consent given in writing by the plaintiff's attorney was sufficient to satisfy § 52-146o.

## IV

Finally, the plaintiff claims that the trial court improperly admitted the transcription because it was obtained through ex parte communications between O'Donnell and Keeney. Specifically, the plaintiff challenges a telephone call between O'Donnell and Keeney in which O'Donnell requested the proper address to which to mail his $125 check for the transcription. The plaintiff also challenges the letter sent from O'Donnell to Keeney requesting the transcription. As the plaintiff conceded in this court, however, if there was no breach of § 52-146o, there would be no wrongful ex parte communications in the present case. Because we concluded in part III of this opinion that there was no violation of § 52-146o, we conclude that the plaintiff's claim is without merit.

The judgment is affirmed.

In this opinion the other justices concurred.

[12] We note, however, that an examination of the surrounding sections of chapter 899 of the General Statutes reveals that there are specific definitions for the term "consent" contained in the following: General Statutes § 52-146c, involving privileged communications between a psychologist and a patient; General Statutes §§ 52-146d through 52-146i, involving privileged communications between a psychiatrist and a patient; General Statutes § 52-146p, involving privileged communication between a family therapist and a person consulting such therapist; General Statutes § 52-146q, involving confidential communications between a social worker and a person consulting such social worker; and General Statutes § 52-146s, involving confidential information between a professional counselor and a person consulting such counselor. In all of these sections, consent may be given only through a writing.