******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

LM INSURANCE CORPORATION *v.* CONNECTICUT
DISMANTELING, LLC
(AC 38179)

DiPentima, C. J., and Beach and Pellegrino, Js.

*Argued November 18, 2016—officially released May 2, 2017*

(Appeal from Superior Court, judicial district of
Fairfield, Hon. George N. Thim, judge trial referee.)

*Jonathan J. Klein*, for the appellant (defendant).

*Christopher A. Klepps*, for the appellee (plaintiff).

*Opinion*

DiPENTIMA, C. J. The defendant, Connecticut Dismanteling, LLC, appeals from the judgment of the trial court rendered in favor of the plaintiff, LM Insurance Corporation. On appeal, the defendant claims that (1) the court improperly admitted into evidence a certain document under the business records exception to the rule against hearsay, (2) there was insufficient evidence to support the judgment rendered in favor of the plaintiff and (3) the court improperly drew an adverse inference against the defendant for failing to call two witnesses at trial. We disagree with the defendant's claims, and, accordingly affirm the judgment of the trial court.

Following a one day trial to the court, the following facts and procedural history were set forth in its memorandum of decision. The defendant is in the business of demolishing commercial and residential structures. In 2011, it obtained a policy of workers' compensation insurance from the plaintiff. This policy covered a one year period of time from September 6, 2011 to September 6, 2012. After receiving certain information, the plaintiff made an initial determination that the total premium for the year was $1000. At the conclusion of that twelve month period, the plaintiff had an audit conducted. As a result, the premium was revised and, after all adjustments, the defendant was billed an additional $82,899. The process of adjusting the premium involved a classification of workers by the type of work performed, the business operation of the defendant, and an investigation of the defendant's payroll records, accounts, ledgers and other documents.

The second policy obtained by the defendant from the plaintiff covered the time period from September 6, 2012 to September 6, 2013. On January 7, 2013, the plaintiff canceled the second policy as a result of nonpayment of the revised premium for the first policy. Following the cancelation, one of the plaintiff's employees, Kimberly MacBain, performed a second audit, and determined the revised premium for the second policy to be $11,713 for the time period of September 6, 2012 to January 7, 2013.

The plaintiff commenced this action, alleging a single count of breach of contract; namely, the nonpayment of $94,612, the total of the two revised premiums.[1] The defendant denied liability and countered that the plaintiff had miscalculated the revised premiums. Specifically, the defendant claimed that four of its employees, Alfred Capozziello, Bob Stadt, Desmond Williams and Matthew Brandimarte, had been classified incorrectly. An incorrect classification substantially impacted the amount due to the plaintiff. The premium was calculated by multiplying the classification code of an employee by the payroll rate for each classification.

Specifically, the rate for the defendant's employees classified under code 5403, carpentry not otherwise specified, was $21.69 per $100 of payroll. This rate was significantly higher than employees classified as clerical workers, thirty-seven cents per $100 of payroll, or outside sales persons, seventy-eight cents per $100 of payroll.

The court noted MacBain's testimony that "the rules of workers' [compensation] state that you apply the class code that best fits the operation, and then you pull out standard exception [employees]. . . . [I]t's up to the policyholder to show us backup on the specific duties for standard exception employees." In other words, all of the employees of a particular employer initially were classified with the code that best fit the nature of the business as a whole. The employer then had the opportunity to demonstrate that a different code, with a lower rate, should apply to a particular employee. Thus, the plaintiff used the code 5403 as the default classification for all of the defendant's employees due to its operation as a demolition business. The court found that all of the defendant's employees had been classified properly with the exception of Alfred Capozziello.[2] The court also noted that the defendant "kept very loose records and when audited [provided] minimum or suspect information concerning payroll and job classifications." (Internal quotation marks omitted.) After adjusting for the misclassification for Alfred Capozziello, the court rendered judgment in favor of the plaintiff in the amount of $89,447.23 on April 23, 2015.

On May 8, 2015, the defendant filed a motion to reargue pursuant to Practice Book §§ 11-11 and 11-12. Specifically, it claimed that the court erred by drawing an unfavorable inference as a result of the defendant's failure to present Williams and Brandimarte as witnesses during the trial. The defendant also noted that the evidence at trial revealed that Brandimarte had died prior to the start of the trial and that Williams had not been an employee of the defendant. The court denied the motion to reargue on July 2, 2015. This appeal followed. Additional facts will be set forth as necessary.

I

The defendant first claims that the court improperly admitted into evidence a certain document under the business records exception to the rule against hearsay. Specifically, he contends that the court improperly admitted into evidence the first audit, conducted by Steven White, because he was an employee of a third party company and, therefore, his audit could not be a business record of the plaintiff under this hearsay exception. The defendant also argues that the plaintiff failed to establish that the first audit was a business record of the third party company because the foundational elements for the business records exception were not established. The defendant further argues that it

was harmed as a result of the evidentiary error. The plaintiff counters that the court properly admitted the first audit into evidence pursuant to our decision in *Crest Plumbing & Heating Co.* v. *DiLoreto*, 12 Conn. App. 468, 531 A.2d 177 (1987). It further contends that defendant's challenge to the foundational elements of the first audit was not raised before the trial court and, even if it had been, it is without merit. We agree with the plaintiff.

We begin by setting forth our standard of review. "The trial court's ruling on evidentiary matters will be overturned only upon a showing of a clear abuse of the court's discretion. . . . We will make every reasonable presumption in favor of upholding the trial court's ruling, and only upset it for a manifest abuse of discretion. . . . [Thus, our] review of such rulings is limited to the questions of whether the trial court correctly applied the law and reasonably could have reached the conclusion that it did. . . . To the extent [that] a trial court's admission of evidence is based on an interpretation of the Code of Evidence, our standard of review is plenary. For example, whether a challenged statement properly may be classified as hearsay and whether a hearsay exception properly is identified are legal questions demanding plenary review. . . . We review the trial court's decision to admit [or exclude] evidence, if premised on a correct view of the law, however, for an abuse of discretion. . . . Additionally, [b]efore a party is entitled to a new trial because of an erroneous evidentiary ruling, he or she has the burden of demonstrating that the error was harmful. . . . The harmless error standard in a civil case is whether the improper ruling would likely affect the result." (Citations omitted; internal quotation marks omitted.) *Milford Bank* v. *Phoenix Contracting Group, Inc.*, 143 Conn. App. 519, 532–33, 72 A.3d 55 (2013); see also *State* v. *Saucier*, 283 Conn. 207, 218–221, 926 A.2d 633 (2007); *Doyle* v. *Kamm*, 133 Conn. App. 25, 39, 35 A.3d 308 (2012).

Next, we identify the relevant legal principles regarding the defendant's evidentiary arguments. "Hearsay is an out-of-court statement offered to establish the truth of the matter asserted. Conn. Code Evid. § 8-1 (3). Hearsay evidence is inadmissible, subject to certain exceptions. Conn. Code Evid. § 8-2." *Manka* v. *Walt Disney Co.*, 149 Conn. App. 1, 4 n.6, 87 A.3d 1165 (2014); see also *Doe* v. *Hartford Roman Catholic Diocesan Corp.*, 317 Conn. 357, 390, 119 A.3d 462 (2015). One such exception is the business records exception. See General Statutes § 52-180; Conn. Code Evid. § 8-4. In order to establish that a document falls within the business records exception to the rule against hearsay, codified at § 52-180,[3] three requirements must be met. See *Milford Bank* v. *Phoenix Contracting Group, Inc.*, supra, 143 Conn. App. 536. "The proponent need not produce as a witness the person who made the record or show that such person is unavailable but must establish that

[1] the record was made in the regular course of any business, and [2] that it was the regular course of such business to make such writing or record [3] at the time of such act, transaction, occurrence or event or within a reasonable time thereafter." (Internal quotation marks omitted.) Id., 535; see also C. Tait & E. Prescott, Connecticut Evidence (5th Ed. 2014) § 8.28.4, p. 600. Our Supreme Court has explained that the rationale for this exception "derives from the inherent trustworthiness of records on which businesses rely to conduct their daily affairs." (Internal quotation marks omitted.) *Connecticut Light & Power Co.* v. *Gilmore*, 289 Conn. 88, 116, 956 A.2d 1145 (2008); see generally *New England Savings Bank* v. *Bedford Realty Corp.*, 246 Conn. 594, 600–601, 717 A.2d 713 (1998) (tracing common-law and statutory origins of business records exception). Furthermore, the business records exception is liberally interpreted. *New England Savings Bank* v. *Bedford Realty Corp*, supra, 603; see also C. Tait & E. Prescott, supra, § 8.28.4, p. 600.

The following facts relate to this claim. MacBain, a field audit manager employed by the plaintiff, testified at the trial. She stated that White, an auditor for NEIS, a vendor of the plaintiff, conducted the audit at the end of the first policy period. White then provided that audit to the plaintiff. MacBain further testified that she was familiar with the results of that audit, that the audit was kept in the usual course of the plaintiff's business, and that the report was created contemporaneously with the audit. At this point, the defendant raised two objections. First, defense counsel argued that the plaintiff's counsel was attempting to qualify the audit as a business record not subject to the rule against hearsay, but no document had been shown to MacBain. Second, counsel argued that the audit was created by a third party and not the plaintiff, and therefore MacBain could not authenticate it. The court sustained the objection on the basis that no document had been presented to MacBain.

The plaintiff's counsel then had the document marked for identification and showed it to MacBain, who identified it as the audit prepared by White for the plaintiff. MacBain indicated that the White audit was in the possession of the plaintiff and had been shared with the defendant. The defendant's counsel objected as follows: "This goes back to the second prong of the previous objection, which is this is not a business record of [the plaintiff]. This audit, the witness had testified, was created by an independent auditor from NEIS, which is an outside vendor. It's—and—and whether it's a business record of NEIS that's something that we don't know, but it's certainly not a record of [the plaintiff]. It's something that was provided by the outside [vendor] to [the plaintiff], and it doesn't satisfy the business records exception under section 8-4 of the Code of Evidence." The court overruled the defendant's objec-

tion, concluding that the White audit was a business record of the plaintiff, and admitted it as a full exhibit.

A

The defendant first argues that the court improperly admitted the White audit into evidence pursuant to the business records exception to the rule against hearsay because it was a business record of NEIS and not the plaintiff. The defendant further contends that the decision relied upon by the trial court in overruling its objection to the White audit, *Crest Plumbing & Heating Co.* v. *DiLoreto*, supra, 12 Conn. App. 468, was decided incorrectly. We are not persuaded by the defendant's arguments.

The defendant claims on appeal that this hearsay exception does not apply to a business record created by an entity other than the party seeking its admission into evidence. Distilled to its essence, the defendant challenges the applicability of the business records exception in the case. Accordingly, we employ the plenary standard of review. See *Midland Funding, LLC* v. *Mitchell-James*, 163 Conn. App. 648, 653, 137 A.3d 1 (2016); *Sharp Electronics Corp.* v. *Solaire Development, LLC*, 156 Conn. App. 17, 29, 111 A.3d 533 (2015).

A review of our decision in *Crest Plumbing & Heating Co.* v. *DiLoreto*, supra, 12 Conn. App. 468, will facilitate the resolution of the defendant's appellate argument. That case involved a consolidated appeal of three separate contract actions against a common defendant, a partner in D & T Construction Company (D & T). Id., 469. In one of the actions, the plaintiff, Mac's Car City, Inc. (Mac), entered into a contract with D & T for the construction of a functioning automobile dealership in exchange for $256,000. Id., 471. As a result of delays, D & T defaulted and Mac commenced a breach of contract action alleging incomplete and improper workmanship. Id., 472. On appeal, D & T claimed that the court improperly had refused to admit business records of the construction mortgagee's engineer into evidence. Id., 472–74. We agreed with the defendant, and reversed the judgment of the trial court. Id., 477.

The construction mortgagee, American National Bank, had entered into a contract with Alfred Wilner, Inc., a construction management corporation. Id., 472–73. An engineer or architect employed by Alfred Wilner, Inc., periodically was sent to the construction site to conduct an inspection, and he forwarded six progress reports to American National Bank. Id., 473. At the trial, an officer of American National Bank testified that "it was in the bank's general course of business to keep a record of the reports and that the reports were of field inspections made by an engineer employed by the bank." Id., 473–74. D & T attempted to have these reports admitted into evidence but was thwarted when the trial court sustained the objection that, because the

business records were made by someone other than D & T, § 52-180 was not satisfied. Id., 474.

We disagreed with the conclusion of the trial court. Id. "In the present case, the trial court excluded the engineer's reports because they were prepared by a party other than the organization whose business records they were purported to be. *There is no requirement in § 52-180, however, that the documents must be prepared by the organization itself to be admissible as that organization's business records.* All that is required is that it be in the regular course of the business to make the 'writing or record.' We believe that the keeping of a report in a bank's file that serves as a basis of whether the bank will pay out money under a loan agreement satisfies the statutory requirement of 'record' and that such a record could reasonably be found to have been made in the course of the bank's business." (Emphasis added.) Id., 475–76. We further determined that the failure to admit these reports did not constitute harmless error. Id., 476–77.

Although the defendant in the present case requests this panel to revisit the holding of *Crest Plumbing & Heating Co.* v. *DiLoreto*, supra, 12 Conn. App. 468, we are not at liberty to do so. "[I]t is axiomatic that one panel of this court cannot overrule the precedent established by a previous panel's holding. . . . As we often have stated, this court's policy dictates that one panel should not, on its own, reverse the ruling of a previous panel. The reversal may be accomplished only if the appeal is heard en banc. . . . Prudence, then, dictates that this panel decline to revisit such requests." (Citations omitted; internal quotation marks omitted.) *Staurovsky* v. *Milford Police Dept.*, 164 Conn. App. 182, 202–203, 134 A.3d 1263, (2016), appeal dismissed, 324 Conn. 693, 154 A.3d 525 (2017) (certification improvidently granted); see also *Samuel* v. *Hartford*, 154 Conn. App. 138, 144, 105 A.3d 333 (2014); see generally *Brody* v. *Brody*, 315 Conn. 300, 318 n.8, 105 A.3d 887 (2015); *Hylton* v. *Gunter*, 313 Conn. 472, 488 n.16, 97 A.3d 970 (2014).

Additionally, in *New England Savings Bank* v. *Bedford Realty Corp.*, supra, 246 Conn. 603, our Supreme Court directly quoted the language from *Crest Plumbing & Heating Co.* that "[t]here is no requirement in § 52-180 . . . that the documents must be prepared by the organization itself to be admissible as that organization's business records." (Internal quotation marks omitted.) This language was cited to support the court's reasoning in its analysis that certain documents were admissible under the business records exception. See also *Calcano* v. *Calcano*, 257 Conn. 230, 241, 777 A.2d 633 (2001) (noting that it is not necessary that witness is entrant of business records or in employ of business when entry was made). It is axiomatic that, as an intermediate court, we are bound by the decisions of our

Supreme Court. "[I]t is manifest to our hierarchical judicial system that [the Supreme Court] has the final say on matters of Connecticut law and that the Appellate Court and Superior Court are bound by [its] precedent." (Internal quotation marks omitted.) *Commissioner of Public Safety* v. *Freedom of Information Commission*, 137 Conn. App. 307, 324, 48 A.3d 694 (2012), aff'd, 312 Conn. 513, 93 A.3d 1142 (2014); see also *Brooks* v. *Powers*, 165 Conn. App. 44, 71 n.15, 138 A.3d 1012, cert. granted on other grounds, 322 Conn. 907, 143 A.3d 603 (2016); *Hinde* v. *Specialized Education of Connecticut, Inc.*, 147 Conn. App. 730, 747–48, 84 A.3d 895 (2014). In accordance with this commitment to precedent, we conclude that the defendant's argument that the White audit should not have been admitted into evidence on the basis that it was not a business record of the plaintiff is unavailing.

B

The defendant next argues that the plaintiff did not establish the foundational elements for the business records exception. Specifically, it contends that the plaintiff failed to establish the statutory requirements and, therefore, the White audit should not have been admitted into evidence. See, e.g., C. Tait & E. Prescott, supra, § 8.28.4 (a), p. 600. We conclude that this evidentiary claim was not raised before the trial court, and therefore not preserved for appellate review.

"[T]he standard for the preservation of a claim alleging an improper evidentiary ruling at trial is well settled. This court is not bound to consider claims of law not made at the trial. . . . In order to preserve an evidentiary ruling for review, trial counsel must object properly. . . . Once counsel states the authority and ground of [the] objection, any appeal will be limited to the ground asserted. . . . Assigning error to a court's evidentiary rulings on the basis of objections never raised at trial unfairly subjects the court and the opposing party to trial by ambush." (Internal quotation marks omitted.) *In re Kasmaesha C.*, 148 Conn. App. 666, 677–78, 84 A.3d 1279, cert. denied, 311 Conn. 937, 88 A.3d 549 (2014); *Milford Bank* v. *Phoenix Contracting Group, Inc.*, supra, 143 Conn. App. 534–35; see also *State* v. *Jose G.*, 290 Conn. 331, 342–43, 963 A.2d 42 (2009) ("Practice Book [§ 5-5] provides in pertinent part that [w]henever an objection to the admission of evidence is made, counsel shall state the grounds upon which it is claimed or upon which objection is made, succinctly and in such form as he [or she] desires it to go upon the record, before any discussion or argument is had. [Practice Book § 60-5] provides in [relevant] part that the Supreme Court [and the Appellate Court are] not bound to consider a claim unless it was distinctly raised at the trial . . . ." [Internal quotation marks omitted.]); see generally E. Prescott, Connecticut Appellate Practice & Procedure (5th Ed. 2016), § 8-2:1.1,

p. 440.

MacBain testified that White, an employee of NEIS, provided the results of his audit to the plaintiff, that she was familiar the results of White's audit, that such audits were kept in the usual course of the plaintiff's business and that the report of the results of the audit was done contemporaneously with White's audit. When the plaintiff's counsel inquired "what was the audit," the defendant's counsel raised two objections: first, the actual audit had not been identified and shown to MacBain or marked for identification and second, the White audit was created by a third party, and not the plaintiff. The court did not address the second objection and instead sustained the first objection. After the plaintiff's counsel showed the White audit to MacBain and she identified it, she indicated that it had been prepared for the plaintiff, it was in the plaintiff's possession and it had been shared with the defendant; it was then offered as a full exhibit. The defendant's counsel objected *solely on the basis that it had been created by a third party and not the plaintiff*.[4] The court overruled the defendant's objection, concluding that the White audit qualified as a business record and was admissible on that basis.[5]

The defendant argues that the plaintiff failed to establish that the White audit was a business record of NEIS, and therefore not a business record of the plaintiff. It further contends that both of these determinations were necessary to overcome the issue of "hearsay within hearsay."[6] The defendant also implicitly contends that the questions posed by the plaintiff's counsel and MacBain's responses that occurred prior to the White audit being shown to MacBain could not establish the foundational requirements to qualify it as a business record of the plaintiff.

The flaw in the defendant's appellate argument is that these specific objections never were raised before the trial court, and therefore are not preserved for our review. The defendant's counsel first objected on two grounds: first, the White audit had not been shown to MacBain, and second, that the White audit was created by a third party and therefore MacBain could not authenticate it. The court agreed with the defendant as to the first basis for its objection. After the plaintiff's counsel showed the White audit to MacBain and asked her additional questions, the defendant objected again solely on the basis that it was not a business record of the plaintiff. The court overruled the objection on the basis of our decision in *Crest Plumbing & Heating Co.* v. *DiLoreto*, supra, 12 Conn. App. 468. At no point did the defendant's counsel move to strike any of MacBain's testimony or object on the basis that the foundational requirement of the business records exception had not been met. Therefore, we decline to review this evidentiary claim that was raised for the first time on appeal.

See *Calcano* v. *Calcano*, supra, 257 Conn. 244–45; *Milford Bank* v. *Phoenix Contracting Group, Inc.*, supra, 143 Conn. App. 534–35.[7]

## II

The defendant next claims that the court improperly determined there was sufficient evidence to support the judgment rendered in favor of the plaintiff. Specifically, the defendant contends that the plaintiff did not sufficiently establish the correctness and accuracy of the two audits that are the bases for the premiums claimed by the plaintiff. The defendant also argues that several of the court's factual findings regarding the classification of some of the defendant's employees were clearly erroneous. We are not persuaded by this claim and decline the implicit invitation to retry the case.

At the outset, we set forth our standard of review for a challenge to the sufficiency of the evidence. "[W]e must determine whether the facts set out in the memorandum of decision are supported by the evidence or whether, in light of the evidence and the pleadings in the whole record, those facts are clearly erroneous. . . . We also must determine whether those facts correctly found are, as a matter of law, sufficient to support the judgment. . . . [W]e give great deference to the findings of the trial court because of its function to weigh and interpret the evidence before it and to pass upon the credibility of witnesses . . . ." (Internal quotation marks omitted.) *Bhatia* v. *Debek*, 287 Conn. 397, 404, 948 A.2d 1009 (2008); see also *Rana* v. *Terdjanian*, 136 Conn. App. 99, 113, 46 A.3d 175, cert. denied, 305 Conn. 926, 47 A.3d 886 (2012). Additionally, "[w]e do not examine the record to determine whether the trier of fact could have reached a conclusion other than the one reached . . . . Rather, on review by this court every reasonable presumption is made in favor of the trial court's ruling. . . . [E]vidence is not insufficient . . . because it is conflicting or inconsistent. [The trier of fact] is free to juxtapose conflicting versions of events and determine which is more credible." (Internal quotation marks omitted.) *Rozbicki* v. *Gisselbrecht*, 155 Conn. App. 371, 377–78, 110 A.3d 458, cert. denied, 317 Conn. 905, 114 A.3d 1221 (2015); see also *Masse* v. *Perez*, 139 Conn. App. 794, 797–98, 58 A.3d 273 (2012), cert. denied, 308 Conn. 905, 61 A.3d 1098 (2013).

"The function of an appellate court is to review, and not to retry, the proceedings of the trial court. . . . Further, we are authorized to reverse or modify the decision of the trial court only if we determine that the factual findings are clearly erroneous in view of the evidence and pleadings in the whole record, or that its decision is otherwise erroneous in law. . . . In a civil case, proof of a material fact by inference from circumstantial evidence need not be so conclusive as to exclude every other hypothesis. It is sufficient if the evidence produces in the mind of the trier a reasonable

belief in the probability of the existence of the material fact." (Citation omitted; internal quotation marks omitted.) *Connecticut Bank & Trust Co., N.A.* v. *Reckert*, 33 Conn. App. 702, 704–705, 638 A.2d 44 (1994). Guided by these principles, we consider each of the defendant's argument in turn.

A

The defendant first argues that the plaintiff failed to establish the accuracy of both audits that had been conducted to calculate the premium for workers' compensation insurance. Specifically, it contends that the plaintiff did not offer any evidence as to the factual correctness and accuracy of the White audit for the policy period of September 6, 2011 through September 6, 2012, nor did the plaintiff set forth the factual basis for MacBain's classification of certain employees in the audit for the time period of September 6, 2012 through January 7, 2013.

In part I of this opinion, we concluded that the White audit properly was admitted into evidence pursuant to the business records exception to the rule against hearsay. We noted that this document was presented through the testimony of MacBain. It is well established that the witness who authenticates a business record does not have to be the same individual who prepared the report. *First Union National Bank* v. *Woermer*, 92 Conn. App. 696, 708–709, 887 A.2d 893 (2005), cert. denied, 277 Conn. 914, 895 A.2d 788 (2006); see also *SKW Real Estate Ltd. Partnership* v. *Gallicchio*, 49 Conn. App. 563, 576, 716 A.2d 903, cert. denied, 247 Conn. 926, 719 A.2d 1169 (1998).

Contrary to the defendant's appellate argument, the plaintiff was not obligated to establish the accuracy of the White audit through MacBain's testimony. In *New England Savings Bank* v. *Bedford Realty Corp.*, supra, 246 Conn. 602, our Supreme Court stated that "[t]he proponent need not prove the accuracy of the [business] record; its weight is an issue for the trier of fact." See also *Midstates Resources Corp.* v. *Dobrindt*, 70 Conn. App. 420, 425, 798 A.2d 494 (2002); *Federal Deposit Ins. Corp.* v. *Carabetta*, 55 Conn. App. 369, 375, 739 A.2d 301, cert. denied, 251 Conn. 927, 742 A.2d 362 (1999); *State* v. *Waterman*, 7 Conn. App. 326, 341–42, 509 A.2d 518, cert. denied, 200 Conn. 807, 512 A.2d 231 (1986); C. Tait & E. Prescott, supra, § 8.28.4, p. 600. The trial court, as the trier of fact, was free to credit the two audits and the data contained therein to render a judgment in favor of the plaintiff for nearly $90,000.

B

Next, we consider the defendant's argument that certain employees were misclassified and should not have received the designation of code 5403. MacBain testified that she had been employed by the plaintiff for nearly thirteen years and had held the position of field auditor

prior to her promotion to field audit manager. She explained that a field auditor examines the records of a business and classifies the employees of that business in order to determine the premium for the workers' compensation insurance policy. MacBain stated that the defendant's business was demolition of commercial businesses and that White, an auditor for NEIS, conducted the first audit on behalf of the plaintiff.[8] She indicated that all of the nonclerical employees of the defendant were classified under code 5403 as a result of the nature of its business. Further, this code applied to all of the defendant's employees unless it was shown that a particular employee belonged in the clerical or sales classifications. MacBain noted that the defendant's burden was to show that the specific duties of the employees present at a job site did not fall within the 5403 classification. Finally, MacBain stated that she had reviewed the White audit and it looked "correct" to her.

MacBain conducted the second audit and met with two individuals representing the defendant, Russell Capozziello, Jr., and David Cohen. MacBain reviewed certain records of the business, but was not provided with all of the information that she had requested. She also testified that there was an anomaly in the defendant's payroll records. Furthermore, the defendant had sought to have an excessive number of its employees classified as sales personnel. Therefore, in MacBain's opinion, there was an insufficient number of employees to perform the demolition work. MacBain also indicated that she did not rely on an employee's title, but inquired as to the specific duties performed by that individual in order to determine whether the employee should be removed from the default classification.

The trial court clearly credited MacBain's testimony as the basis for the default classification of the defendant's employees. "The plaintiff applied an overall default classification that was code 5403. This is the classification that applies to workers in a demolition business such as the defendant's business." The court further found that an employee would not be removed from the default classification unless that employee's duties were " '100 percent' " sales or clerical. After reviewing the evidence, the court found that the defendant kept " 'very loose records and when audited [provided] minimum or suspect information concerning payroll and job classifications.' "

The defendant claims that the classification of Stadt under code 5403 was clearly erroneous. We disagree. MacBain testified that during her audit, she had a conversation regarding the duties of Stadt, the defendant's highest paid employee. She was told by representatives of the defendant that Stadt was involved in sales but also was present on the job site. MacBain also was told that Stadt supervised the work done at the job site, and

the defendant did not provide her with any documentation detailing his duties or limiting them to only sales. Because there was evidence in the record that Stadt supervised employees of the defendant at a job site, a duty outside of the parameters of a salesperson, he fell within the default classification. We cannot say that this finding was clearly erroneous. "A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. . . . We do not examine the record to determine whether the trier of fact could have reached a conclusion other than the one reached. . . . Because the trial court had an opportunity far superior to ours to evaluate the evidence . . . every reasonable presumption is made in favor of the correctness of its ruling . . . ." (Citation omitted; internal quotation marks omitted.) *Rogan* v. *Rungee*, 165 Conn. App. 209, 218, 140 A.3d 979 (2016).

Similarly, we reject the defendant's contention that the court's finding regarding the classification of Brandimarte and Williams was clearly erroneous. As we have noted, the court found, based on MacBain's testimony, that the default classification of code 5403 applied to all of the employees unless the defendant established that a different code was applicable to a particular employee. In its decision, the court noted that there was "no credible evidence" that these two employees should have been removed from the default classification. The defendant presented the testimony of Russell F. Capozziello, Sr., who stated that Brandimarte did not work as a foreman on demolition sites and that Williams only picked up flat tires from the defendant's wrecking yard, repaired the tires, and returned them to the yard. The court, however, was free to reject this testimony. See *Jalbert* v. *Mulligan*, 153 Conn. App. 124, 135, 101 A.3d 279, cert. denied, 315 Conn. 901, 104 A.3d 107 (2014); *Przekopski* v. *Przekop*, 124 Conn. App. 238, 245, 4 A.3d 844 (2010). We conclude, therefore, that the court's findings regarding these employees were not clearly erroneous and there was sufficient evidence in the record to support the judgment rendered in favor of the plaintiff.

### III

The defendant's final claim is that the court improperly drew an adverse inference against it for failing to call two witnesses at trial. Specifically, it argues that the court erred by drawing an adverse inference against the defendant for not calling Williams and Brandimarte as witnesses and for finding that those two individuals were employed by the defendant at the time of the trial. We are not persuaded.

This claim is composed of two components. First, the defendant contends that the court made improper

findings regarding the employment status of Williams and Brandimarte. This challenge to the court's factual findings is subject to the clearly erroneous standard of review. Second, the defendant claims that the use of an adverse inference constituted an error of law, and therefore is subject to plenary review by this court.

The following additional facts are necessary for our discussion. At the trial, Russell Capozziello, Sr., was asked if he knew Brandimarte. He replied that he had known Brandimarte for twenty-five years and that he had died. In the memorandum of decision, the court stated: "Williams and . . . Brandimarte are still employed by the defendant but were not called as witnesses." In its motion to reargue, the defendant pointed to this sentence from the decision and contended that court "construed against the defendant the fact that it did not call . . . Brandimarte and . . . Williams to testify at trial. The court's misapprehension of the key facts that . . . Brandimarte and . . . Williams are still employed by the defendant were crucial to the court's decision."

The defendant then argued that the policy underlying General Statutes § 52-216c applied to the present case. That statute provides: "*No court in the trial of a civil action may instruct the jury that an inference unfavorable to any party's cause may be drawn from the failure of any party to call a witness at such trial.* However, counsel for any party to the action shall be entitled to argue to the trier of fact during closing arguments, except where prohibited by section 52-174, that the jury should draw an adverse inference from another party's failure to call a witness who has been proven to be available to testify." (Emphasis added.) General Statutes § 52-216c. The defendant recognized that the plain language of the statute prohibits a trial judge from instructing the jury to draw an unfavorable inference as a result of the failure to call a witness. Thus, because this was a trial to the court and not a trial to a jury, § 52-216c does not apply. Nevertheless, the defendant argued that as a matter of public policy, "it [was] improper for the court, when it is the finder of fact, to draw the adverse inference. Had this case been tried to a jury, both the argument for the adverse inference and the drawing of the adverse inference would have been improper. Drawing the adverse inference here, therefore, is contrary to public policy and should not have been done." On July 2, 2015, the court summarily denied the motion to reargue.

First, we address the defendant's contention that the court's finding that Williams was an employee of the defendant was clearly erroneous. Russell Capozziello, Sr., testified during cross-examination that Williams still worked for him. Additionally, Williams was listed in the White audit as having been paid for work as a subcontractor. Williams also was listed in the MacBain

audit. As a result of this evidence, the court's finding that Williams was employed by the defendant, for purposes of workers' compensation insurance, was not clearly erroneous.

The court's statement that Brandimarte was still employed by the defendant at the time of the trial and memorandum of decision, however, is clearly erroneous. Russell Capozziello, Sr., testified that Brandimarte had passed away. The defendant attached a copy of Brandimarte's obituary[9] to its motion to reargue. The plaintiff does not dispute the veracity of this assertion by the defendant.[10]

We note that § 52-216c, by its plain language, does not apply to the present case.[11] That statute prevents the court from instructing the *jury* that it may draw an unfavorable inference as a result of the failure of a party to call a witness. A bench trial occurred in the present case. Further, it remains the law in this state that "a trier of fact generally may draw an adverse inference against a party for its failure to rebut evidence." *In re Samantha C.*, 268 Conn. 614, 637, 847 A.2d 883 (2004).

Additionally, we disagree that the court drew an adverse inference in this case. The court correctly observed that the defendant could have presented the testimony of Stadt or Williams to support the claim that they should have been removed from the default code 5403 classification.[12] In other words, the court's comment did not constitute an adverse inference as result of the defendant's failure to call its employees, Williams and Stadt, as witnesses; rather, the court properly observed that the defendant had failed to rebut the plaintiff's evidence that certain employees should not have been removed from the default classification.[13] For these reasons, we reject the defendant's third claim.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] "The elements of a breach of contract action are the formation of an agreement, performance by one party, breach of the agreement by the other party and damages." (Internal quotation marks omitted.) *Suntech of Connecticut, Inc.* v. *Lawrence Brunoli, Inc.*, 143 Conn. App. 581, 585, 72 A.3d 1113, cert. denied, 310 Conn. 910, 76 A.3d 626 (2013); *Seligson* v. *Brower*, 109 Conn. App. 749, 753, 952 A.2d 1274 (2008).

[2] See footnote 13 of this opinion.

[3] General Statutes § 52-180 provides in relevant part: "(a) Any writing or record, whether in the form of an entry in a book or otherwise, made as a memorandum or record of any act, transaction, occurrence or event, shall be admissible as evidence of the act, transaction, occurrence or event, if the trial judge finds that it was made in the regular course of any business, and that it was the regular course of the business to make the writing or record at the time of the act, transaction, occurrence or event or within a reasonable time thereafter.

"(b) The writing or record shall not be rendered inadmissible by (1) a party's failure to produce as witnesses the person or persons who made the writing or record, or who have personal knowledge of the act, transaction, occurrence or event recorded or (2) the party's failure to show that such persons are unavailable as witnesses. Either of such facts and all other circumstances of the making of the writing or record, including lack of personal knowledge by the entrant or maker, may be shown to affect the

weight of the evidence, but not to affect its admissibility. . . ." See also Conn. Code Evid. § 8-4.

[4] Specifically, the defendant's counsel stated: "Objection, Your Honor. This goes back to the second prong of the previous objection, which is this is not a business record of [the plaintiff]. This audit, the witness has testified, was created by an independent auditor from NEIS, which is an outside vendor. It's—and—and whether it's a business record of NEIS that's something we don't know, but it's certainly not a record of [the plaintiff]. It's something that was provided by the outside [vendor] to [the plaintiff], and it doesn't satisfy the business records exception under section 8-4 of the Code of Evidence."

[5] The court stated: "Prepared at their request in the normal course of business as kept by them. I conclude it's a business record."

[6] "Connecticut Code of Evidence § 8-7, titled, 'Hearsay within Hearsay,' provides: Hearsay within hearsay is admissible only if each part of the combined statements is independently admissible under a hearsay exception." *Dinan* v. *Marchand*, 91 Conn. App. 492, 498 n.6, 881 A.2d 503 (2005), aff'd, 279 Conn. 558, 903 A.2d 201 (2006); see also *State* v. *Lewis*, 245 Conn. 779, 802, 717 A.2d 1140 (1998).

[7] Even if this claim was reviewable, we would conclude that it is meritless. The necessary foundational questions were posed to MacBain, albeit prior to the White audit being shown to her. Nevertheless, she answered these questions, and there was no objection until she was asked, "what was the audit?" Although the court sustained the defendant's objection, there was no request to strike MacBain's responses. Once the White audit was marked as an exhibit and shown to MacBain, the court was free to conclude that her prior responses were applicable to that particular document. The defendant has not provided us with any authority to the contrary. Mindful of the modest standard necessary to establish that a document qualifies as a business record and the broad discretion afforded to the court's conclusion that the White audit fell within the business records exception, we would conclude that the court's evidentiary ruling was not improper.

[8] During cross-examination, MacBain conceded that she lacked any firsthand knowledge of White's education, training and level of experience in conducting workers' compensation audits, but did state that she had reviewed audits that he had conducted with respect to other companies.

[9] According to the obituary, Brandimarte passed away on June 19, 2014, approximately eight months before the trial in the present case.

[10] In its appellate brief, the plaintiff concedes that the "trial court indeed was mistaken in finding that . . . Brandimarte was available to testify. He passed away prior to trial." It also posited that the court confused Brandimarte with Stadt.

[11] Our Supreme Court, in *State* v. *Malave*, 250 Conn. 722, 735, 737 A.2d 442 (1999), cert. denied, 528 U.S. 1170, 120 S. Ct. 1195, 145 L. Ed. 2d 1099 (2000), explained the policy behind the enactment of § 52-216c. Specifically, it observed that the "influence of the trial judge on the jury is necessarily and properly of great weight, and . . . his [or her] lightest word or intimation is received with deference, and may prove controlling . . . ." (Internal quotation marks omitted.) Thus, the policy of § 52-216c is to prevent a jury from being unduly influenced by a specific instruction from the court to draw an adverse influence. This concern is absent from the present case.

[12] Specifically, the court stated: "There is no credible evidence that shows Stadt, Williams and Brandimarte should be taken out of the default classification for the demolition business."

[13] The defendant prevailed in rebutting the plaintiff's evidence with respect to one of its employees. "Alfred Capozziello was on the payroll for the first audit period but was not [on the payroll] for the second audit period. Hence, MacBain and the defendant's representatives did not discuss his work duties. Russell Capozziello [Sr.] testified that Alfred, who is now deceased, was his brother. Alfred was age eighty-one at the time of the first audit. Russell explained that, while his brother's name appeared on the payroll, what Alfred received was not really wages but a loan for medical expenses. According to Russell, his brother merely picked up and dropped off papers. Russell claims that Alfred was never at a demolition job site. Neither side had more to offer on Alfred's duties. The court finds that Alfred was incorrectly classified. He was not at the job sites. Alfred Capozziello should have been classified as a clerical office employee . . . ."