MARK S. URICH *v*. RICHARD FISH
(SC 16701)

Sullivan, C. J., and Norcott, Palmer, Vertefeuille and Zarella, Js.

Argued April 23—officially released August 27, 2002

*Max F. Brunswick*, for the appellant (plaintiff).

*K. Wynne Bohonnon*, for the appellee (defendant).

*Opinion*

SULLIVAN, C. J. The plaintiff, Mark S. Urich, appeals from the judgment of the trial court, rendered after a

court trial, in favor of the defendant, Richard Fish, on the defendant's counterclaim for violation of the Connecticut Unfair Trade Practices Act (CUTPA), General Statutes § 42-110a et seq.[1] The plaintiff raises the following six issues on appeal: (1) did the trial court improperly conclude that the plaintiff violated CUTPA where the plaintiff argues that a single noncommercial transaction between private individuals does not fall within the scope of CUTPA; (2) if the transaction at issue in this case falls within the scope of CUTPA, did the trial court improperly award punitive damages and attorney's fees under CUTPA; (3) did the trial court improperly award the defendant punitive damages and attorney's fees under CUTPA where the common law limits recovery of punitive damages to attorney's fees; (4) if a party may recover punitive damages and attorney's fees under CUTPA, did the trial court improperly award the defendant punitive damages where the plaintiff argues that the CUTPA violation in the present case is not sufficient to support punitive damages; (5) did the trial court improperly rely on the defendant's exhibits that contained estimates from third parties of the replacement values of items missing from the boat that was the subject of the transaction at issue in this case and that the plaintiff claims were inadmissible hearsay; and (6) did the trial court improperly award prejudgment interest to the defendant where the damages recovered by the plaintiff on the complaint exceeded the damages recovered by the defendant on the counterclaim. We agree with the plaintiff with regard to the hearsay claim and, accordingly, reverse the judgment of the trial court and remand the case for a new trial. We therefore do not reach the other issues on appeal.

The trial court reasonably could have found the following relevant facts. The plaintiff sold a boat to the

[1] General Statutes § 42-110b (a) provides: "No person shall engage in unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce."

defendant in 1993, and he instituted an action against the defendant in 1994 alleging an unpaid balance on the purchase price. The defendant filed a counterclaim against the plaintiff alleging that certain items and equipment that were to be included in the sale of the boat were removed prior to delivery of the boat to the defendant. After a trial to the court, the trial court rendered judgment in favor of the plaintiff on the complaint and in favor of the defendant on the counterclaim. Both parties appealed. The Appellate Court affirmed the judgment in favor of the plaintiff on the complaint and reversed the judgment in favor of the defendant on the counterclaim, remanding the matter for a new trial on the counterclaim. See *Urich* v. *Fish*, 58 Conn. App. 176, 182–83, 753 A.2d 372 (2000). The retrial was limited to two of the allegations in the counterclaim, that items and equipment that were supposed to be included in the sale of the boat were removed prior to delivery and that the alleged removal of these items and equipment was an unfair act in violation of CUTPA.

During the retrial, the defendant offered a list that he had prepared of items that were missing from the boat upon delivery. The list was offered by the defendant both as an indicator of what items were missing and as evidence of their value. The plaintiff objected on the ground that the defendant had not provided a foundation for the value of the items, and the court sustained the objection, ruling that the list was admissible as a list of allegedly missing items but not as evidence of their value. After a foundation had been laid, however, as to the replacement cost of some of the items, primarily in the form of the amount actually paid by the defendant to replace them, the trial court admitted the exhibit in its entirety but with the limitation that the court would rely only on the valuations for which a foundation had been laid. Because the trial was to the court and not a jury, the trial court did

not redact the valuations that lacked a foundation. The defendant also offered two estimates from third parties as to the cost of replacing a radio and a custom-made chair and table that the defendant alleged had been removed from the boat prior to delivery but that the defendant never actually replaced.[2] The plaintiff objected claiming that the estimates were hearsay, but the court overruled the objection, ruling that the estimates were verbal acts and therefore admissible non-hearsay.

At the conclusion of the trial, the trial court rendered judgment for the defendant, finding that several items that should have been included in the sale of the boat had been removed prior to delivery. The trial court also awarded damages to the defendant, apparently basing the award on the list of missing items and their replacement cost that had been prepared by the defendant. Some of the prices included in the court's calculations of damages, however, were based on items for which the defendant had laid no foundation.[3] The court's cal-

---

[2] The cost estimates for the single sideband receiver were $5530.02 and $7325.66. The trial court awarded damages of $5530.02 for the radio. The defendant offered estimates of $3710 for a custom hi-lo table and $1590 for a custom barrel chair, and the trial court awarded damages in those amounts for those items.

[3] The trial court awarded damages for custom sheets and towels, bow cushions and cover, a toaster oven and coffee maker, an anchor, life jackets and a ring buoy, an anchor light and a mast light, an automatic battery charger, a solar minicharger, a bait freezer, a horn, and a remote spotlight in the amount of $5032.35. The amount of damages the trial court awarded for each of these items was the same as the amounts listed by the defendant on the disputed exhibit. The defendant laid a foundation for the values he placed on these items by testifying as to the amounts he actually paid to have them replaced.

The trial court also awarded damages for hoses, lines, and two boat hooks, two fenders, two portable spotlights, a flare kit, a light fixture, three custom soap dispensers, a propane tank, and a custom steering wheel in the amount of $1162.67. The amount of damages the trial court awarded for each of these items was also the same as the amounts listed by the defendant on the disputed exhibit. The defendant had not offered any foundation for the values he placed on these items.

culation of damages was also based in part on the estimates for replacement items, such as the radio, chair, and table that the court had ruled were admissible non-hearsay.

The plaintiff appealed from the judgment of the trial court to the Appellate Court. While the appeal was pending before the Appellate Court, the plaintiff filed a motion requesting articulation, which the trial court denied. The plaintiff then filed a motion in the Appellate Court seeking review of the trial court's denial. The Appellate Court granted the motion for review but declined to compel the trial court to articulate the basis for its judgment. We transferred the appeal to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-1. After oral argument, pursuant to Practice Book § 66-5 we ordered the trial court to articulate the factual and legal basis for its determination that the plaintiff was liable under CUTPA, specifically, whether it found the transaction at issue to be commercial or noncommercial in nature, and whether the transaction was a singular transaction or one of a series of transactions. The trial court submitted an articulation on May 10, 2002, stating that the transaction at issue in this case was commercial in nature and that this transaction was one in a series of transactions.

We begin by setting forth the applicable standard of review. "We have held generally that [t]he trial court has broad discretion in ruling on the admissibility [and relevancy] of evidence. . . . The trial court's ruling on evidentiary matters will be overturned only upon a showing of a clear abuse of the court's discretion." (Internal quotation marks omitted.) *State* v. *Pappas*, 256 Conn. 854, 878, 776 A.2d 1091 (2001). Additionally, "before a party is entitled to a new trial because of an erroneous evidentiary ruling, he or she has the burden of demonstrating that the error was harmful. . . . The harmless error standard in a civil case is whether the

improper ruling would likely affect the result." (Citation omitted; internal quotation marks omitted.) *George* v. *Ericson*, 250 Conn. 312, 327, 736 A.2d 889 (1999).

We conclude that the trial court in the present case abused its discretion in two ways. First, although the trial court properly excluded portions of the list offered by the defendant to establish the cost of replacing some of the items missing from the boat, the court nevertheless relied on those same inadmissible valuations in computing damages. Second, the trial court improperly admitted third party estimates of the cost of replacing some of the missing items and also relied on those estimates in computing damages. The admission of this evidence was not harmless because the valuations were integral to the trial court's judgment in the case. Accordingly, a new trial is warranted.

The first evidentiary claim involves an exhibit offered by the defendant that was a list of the items missing from the boat upon delivery as well as estimates for the replacement costs of these items. The list and cost estimates were prepared by the defendant. This court previously has recognized that the competence of a witness to testify to the value of property may be established by demonstrating that the witness owns the property in question. *State* v. *Baker*, 182 Conn. 52, 60, 437 A.2d 843 (1980). In this case, however, the defendant never became the owner of the items in question and, in fact, had only viewed them briefly while considering purchasing the boat. The defendant, therefore, was not competent to testify as to the value of the items.

Our long settled rule is that a witness is permitted to testify about the value of goods with a proper foundation and when any reasonable qualifications of the witness to do so have been established. See id., 61; *Anderson* v. *Zweigbaum*, 150 Conn. 478, 483–84, 191 A.2d 133 (1963) ("[where] evidence as to reasonable

value has been elicited from witnesses other than the plaintiff, who herself rendered the services, a proper foundation of knowledge of the prevailing rate or market value in the general area of work of the type involved would have been required"); *Vigliotti* v. *Campano*, 104 Conn. 464, 466, 133 A. 579 (1926) (witnesses permitted to testify as to value of services because information was demonstrably derived from trustworthy sources); *Leahy* v. *Cheney*, 90 Conn. 611, 617, 98 A. 132 (1916) (witness not permitted to offer testimony as to value of services in Hartford because she had lived in Missouri for twenty years); *State* v. *White*, 37 Conn. Sup. 796, 802, 437 A.2d 145 (1981) ("[a]lthough the general rule is that any evidence which is relevant to prove value is admissible . . . it is implicit that only competent evidence is actually admissible" [citation omitted]).

In the present case, the defendant admittedly had not laid a foundation for the cost estimates that appeared on the list of missing items that he had prepared at the time the list was first offered into evidence. When the plaintiff objected to the introduction of the list, the defendant acknowledged that no foundation for the cost estimates had been laid but indicated an intent to introduce testimony later in the trial as to how he had computed the cost estimates. The trial court properly excluded the estimates for lack of a foundation at that time because the defendant had not established his competency to testify as to the value of the items and had not laid a proper foundation for the estimates he had prepared. The defendant then proceeded to testify as to what he had paid to replace some of the missing items, thereby laying a foundation for some, but not all, of the prices listed on the disputed exhibit. At the conclusion of that testimony, the trial court indicated that it would consider only the prices for which a foundation had been laid.[4] Because the case was being tried

---

[4] The trial court stated: "And if by admitting in its entirety, which I now intend to do, the court does not retreat from its rulings on individual matters

to the court, however, and not a jury, the court admitted the exhibit in its entirety and without redaction.

The trial court's rulings during this part of the trial were proper. In the court's memorandum of decision issued at the conclusion of the retrial, however, the trial court set forth a list of items that it found were missing and the value that it had found for each of them. This list included several values from the defendant's list of missing items for which no foundation had been laid. The effect was that the trial court effectively admitted into evidence the defendant's testimony as to the value of some of the missing items despite the lack of a foundation for those prices and the defendant's lack of qualifications to estimate the values of the items. Moreover, the inclusion of these improperly admitted values in the court's memorandum of decision as part of the court's calculation of damages demonstrates that the error was not harmless because it clearly affected the outcome of the trial. See *George* v. *Ericson*, supra, 250 Conn. 327.

The defendant's second evidentiary claim is that the trial court improperly admitted hearsay evidence of the value of three of the missing items. "A statement made out-of-court that is offered to establish the truth of the matter contained in the statement is hearsay, and as such is inadmissible. *State* v. *Blades*, 225 Conn. 609, 632, 626 A.2d 273 (1993). *State* v. *King*, 249 Conn. 645, 670, 735 A.2d 267 (1999)." (Internal quotation marks omitted.) *State* v. *Henry*, 253 Conn. 354, 364–65, 752 A.2d 40 (2000). In this case, the statements at issue were price quotes from third parties obtained by the defendant for a custom barrel chair and hi-lo table and a single sideband radio. These price quotes meet the

some of which have thumbs up and some of which have been thumbs down. But, again, it's a court trial rather than a jury trial so I don't think you need to redact it. So exhibit 4 is admitted in its entirety."

definition of hearsay because they were statements made outside of court by the suppliers and were offered by the defendant to establish that the prices quoted represented the true replacement cost of the items.

The court improperly admitted the price quotes as nonhearsay verbal acts.[5] "A verbal act is an out-of-court statement that causes certain legal consequences, or, stated differently, it is an utterance to which the law attaches duties and liabilities." C. Tait, Connecticut Evidence (3d Ed. 2001) § 8.8, p. 575. A verbal act is admissible nonhearsay because it is not being offered for the truth of the facts contained therein. See *State* v. *Mortoro*, 157 Conn. 392, 396, 254 A.2d 574 (1969) (statement that person " 'did a good job' " committing crime admitted not for its truth but to show relationship between parties in prosecution for hindering state's witness); *Gyro Brass Mfg. Corp.* v. *United Automobile, Aircraft & Agricultural Implement Workers of America, AFL-CIO*, 147 Conn. 76, 80, 157 A.2d 241 (1959) (testimony about oral modification of sales agreement was admissible nonhearsay because testimony was being offered to prove only that utterance was made, not for truth of any statements within utterance); *State* v. *Tolisano*, 136 Conn. 210, 214, 70 A.2d 118 (1949) (statements by anonymous callers to suspected bookie's apartment admissible because statements offered not for truth of their content but as proof of verbal act of placing bet); cf. *Annecharico* v. *Patterson*, 44 Conn. App. 271, 276–77, 688 A.2d 1341 (1997) (police report of witness' statement that defendant's car crossed cen-

---

[5] The court stated: "[B]ecause basically, I mean, this is—the fact that someone says I will sell you a widget for five dollars ($5) is itself independent evidence of what the value of a widget is. Now, that can be considered along with all sorts of other evidence, but it's not really hearsay. The fact that someone says I will sell you a widget for five dollars or I will replace a single sideband radio for one hundred dollars ($100) is not hearsay, but the very act of saying a verbal act and it helps to establish the value."

ter line not verbal act because offered to corroborate later testimony and, therefore, for truth of content).

We conclude that the trial court improperly admitted the cost estimates as nonhearsay verbal acts. The estimates were offered to prove the truth of the facts contained therein—namely the replacement values of the radio and the furniture. Therefore, the estimates were inadmissible hearsay. By admitting the estimates, the trial court deprived the plaintiff of all opportunity to cross-examine the suppliers who provided the estimates. Finally, the trial court's reliance on the estimates for its findings as to damages leaves no doubt that the error affected the result of the trial. Accordingly, the error was not harmless and a new trial is warranted.

The judgment is reversed and the case is remanded for a new trial.

In this opinion the other justices concurred.