******************************************************

The "officially released" date that appears near the beginning of an opinion is the date the opinion will be published in the Connecticut Law Journal or the date it is released as a slip opinion. The operative date for the beginning of all time periods for the filing of postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying an opinion that appear in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced or distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

DANIEL A. MARTIN *v.* CHRISTOPHER R. OLSON,
EXECUTOR (ESTATE OF ROBERT K. OLSON)
(AC 46483)

Alvord, Cradle and Westbrook, Js.

*Syllabus*

The plaintiff appealed to this court from the judgment of the trial court
rendered for the defendant on his claims of, inter alia, breach of contract.
The plaintiff had been living with his grandfather, R, for approximately
thirteen years prior to R's death, during which time he provided certain
caregiving services to R. After R's death, the defendant was appointed
the executor of R's estate. The plaintiff sent a claim to the defendant
for compensation for his caregiving services, which the defendant
rejected by filing a return of claims with the Probate Court and sending
the return to the plaintiff in July, 2020. The plaintiff commenced this
action in December, 2020, and the defendant raised several special
defenses including, inter alia, that the plaintiff's claims were barred by
the statute of limitations (§ 45a-363) because he did not commence this
action within 120 days of receiving the return of claims. *Held*:

1. The plaintiff could not prevail on his claim that the trial court improperly
   instructed the jury regarding the effect of the return of claims and the
   defendant's statute of limitations defense; this court concluded that,
   even if it assumed that the jury instruction should have been more
   detailed, any error arising from the jury instructions was harmless and
   did not affect the verdict, as the trial court instructed the jury to answer
   the interrogatories in the order in which they were presented on the
   jury form, and the jury found that the plaintiff had failed to prove an
   essential element of each of his claims prior to addressing the defen-
   dant's special defense.

2. The trial court did not abuse its discretion by admitting into evidence
   testimony regarding the fair rental value of R's real property and evidence
   of the emotional effect of the plaintiff's claims on the defendant and the
   plaintiff's mother: the plaintiff failed to demonstrate that the defendant's
   testimony regarding the fair rental value of the property constituted
   hearsay, as the defendant, in describing his efforts to determine the fair
   rental value, did not testify to any specific out-of-court statements made
   to him, and, in his capacity as executor, the defendant was reasonably
   qualified to talk about the fair rental value; moreover, the court reason-
   ably could have determined that the testimony provided by the defendant
   and the plaintiff's mother regarding their reactions to the plaintiff's claim
   against R's estate was relevant because it was offered to assist the jury
   in determining whether it found credible the plaintiff's testimony that
   R promised to compensate him for his caregiving services.

3. The trial court did not abuse its discretion in allowing the defendant to present the testimony of two "surrebuttal" witnesses during his case-in-chief; regardless of the descriptor attached to the witnesses' testimony by the plaintiff, the court's findings that it would allow the evidence so as not to delay the trial and because it did not surprise the plaintiff reasonably justified its decision to allow the defendant to present this evidence during his case-in-chief.

Argued March 13—officially released June 25, 2024

*Procedural History*

Action to recover damages for, inter alia, breach of contract, and for other relief, brought to the Superior Court in the judicial district of Hartford and tried to the jury before *Budzik, J.*; verdict and judgment for the defendant, from which the plaintiff appealed to this court. *Affirmed.*

*Thomas A. Amato*, for the appellant (plaintiff).

*Steven L. Katz*, for the appellee (defendant).

*Opinion*

ALVORD, J. The plaintiff, Daniel A. Martin, appeals from the judgment of the trial court rendered after a jury verdict in favor of the defendant, Christopher R. Olson, executor of the estate of Robert K. Olson (decedent). On appeal, the plaintiff claims that the court improperly (1) instructed the jury regarding the defendant's statute of limitations defense, (2) admitted into evidence certain testimony, and (3) permitted the defendant to present the testimony of undisclosed witnesses during his case-in-chief.[1] We affirm the judgment of the trial court.

---

[1] We have consolidated certain of the plaintiff's issues on appeal for ease of discussion.

The plaintiff raises three additional claims on appeal, which warrant little discussion. The plaintiff first claims that the court improperly instructed the jury that the applicable burden of proof it was to apply to his claims was clear and convincing evidence rather than clear and satisfactory evidence. The court instructed the jury that clear and convincing evidence is a heightened burden of proof greater than a preponderance of the evidence and less than beyond a reasonable doubt. See footnote 6 of this opinion. Our jurisprudence provides that "[c]lear and satisfactory evidence is the

The following facts, as reasonably could have been found by the jury, and procedural history are relevant to this appeal. In October, 2007, the plaintiff moved into the home of the decedent, his grandfather, at 65 Andreis Trail, South Windsor (property). The plaintiff continued to reside at the property with the decedent until the decedent's death in March, 2020. During this thirteen year period, the plaintiff provided certain caregiving services to the decedent in the form of (1) assisting the decedent with completing errands, (2) completing general household chores and cooking, (3) providing the decedent with his medications, (4) driving the decedent to doctor's appointments, (5) providing care to the decedent when he was ill, and (6) serving as a daily

---

equivalent to clear and convincing evidence." (Internal quotation marks omitted.) *Wallenta* v. *Moscowitz*, 81 Conn. App. 213, 220, 839 A.2d 641, cert. denied, 268 Conn. 909, 845 A.2d 414 (2004). We conclude that the court's instruction was proper and, therefore, we reject the plaintiff's claim.

The plaintiff also asserts, in his statement of issues, that the court improperly denied his motion to set aside the verdict. Aside from that statement, the only other mention of this claim is in the nature of a conclusion in the plaintiff's brief. "[When] a claim is asserted in the statement of issues but thereafter receives only cursory attention in the brief without substantive discussion or citation of authorities, it is deemed to be abandoned." (Internal quotation marks omitted.) *Darin* v. *Cais*, 161 Conn. App. 475, 483, 129 A.3d 716 (2015). We conclude that this claim is inadequately briefed and, accordingly, we decline to address it.

Finally, the plaintiff raises an evidentiary claim that the court improperly permitted the defendant to testify regarding the estate's financial transactions. In his appellate brief, the plaintiff devotes one sentence to his argument that the admission of this testimony was harmful. The plaintiff bears the burden of establishing not only the existence of an erroneous evidentiary ruling but that the evidentiary ruling was harmful. See *LM Ins. Corp.* v. *Connecticut Dismanteling, LLC*, 172 Conn. App. 622, 628, 161 A.3d 562 (2017). "[W]e are not required to review issues that have been improperly presented to this court through an inadequate brief. . . . [W]ithout adequate briefing on the harmfulness of an alleged error, the [plaintiff] is not entitled to review of [the] claim on the merits." (Citation omitted; internal quotation marks omitted.) *MacDermid, Inc.* v. *Leonetti*, 328 Conn. 726, 748, 183 A.3d 611 (2018). We conclude that the plaintiff has inadequately briefed whether the claimed error was harmful and, accordingly, we decline to address it. See id., 749 (defendant's harm analysis consisted of only cursory statements and therefore was inadequately briefed).

presence at the property in the event of an emergency. The decedent's children, including the defendant, also frequently provided care for their father.

After the decedent's death, the defendant was appointed executor of the decedent's estate. The decedent's last will and testament did not include the plaintiff as a beneficiary. On May 29, 2020, the plaintiff sent a claim to the defendant requesting $741,048 for the caregiving services the plaintiff provided to the decedent. On June 5, 2020, the plaintiff sent a supplemental claim to the defendant requesting an increased amount of $1,106,175 for the services he provided to the decedent. On July 10, 2020, the defendant filed with the Probate Court a form titled "Return of Claims and List of Notified Creditors" (return of claims), wherein the defendant rejected the plaintiff's claim by identifying the "date of written disallowance" as July 10, 2020, and stating that the "amount allowed" to the plaintiff was zero dollars. The defendant sent via certified mail the return of claims to the plaintiff. On July 13, 2020, the postal return receipt card was signed. The defendant subsequently received the signed return receipt card.[2]

On October 19, 2020, the plaintiff sent a letter to the defendant by certified mail stating in relevant part: "I understand that you are the executor of [the decedent's estate]. On May 29, 2020 I presented a claim, and on June 6, 2020 an amended claim, to you in your capacity as such executor. You thus far have failed to give notice under [General Statutes §] 45a-360 (a)[3] of your action

[2] The plaintiff testified that he did not receive the return of claims. The return receipt card that was signed and returned to the defendant had an illegible signature on the "signature" line and did not contain a printed name of the signatory.

[3] General Statutes § 45a-360 (a) provides: "The fiduciary shall: (1) Give notice to a person presenting a claim of the rejection of all or any part of his claim, (2) give notice to any such claimant of the allowance of his claim, or (3) pay the claim."

on said claim. Since at least ninety days have elapsed since May 29, 2020 please consider this correspondence my request under [§] 45a-360 (c)[4] that you take action on said claims." (Footnotes added.)

The defendant received the plaintiff's letter on October 24, 2020. On November 23, 2020, the defendant's counsel sent an email to the plaintiff's counsel stating in relevant part: "I have received a letter from your client to the [defendant] requesting action on his claim for caretake[r] services. The claim was denied by virtue of the [return of claims] filed on July 9, 2020.[5] On that form, the claim was denied in its entirety. At this time, we consider the claim to be dismissed as no legal action was commenced within 120 days per Connecticut law." (Footnote added.)

In December, 2020, the plaintiff commenced this action against the defendant. In the plaintiff's operative amended complaint, he alleged five causes of action, captioned breach of express oral contract, breach of implied-in-fact contract, quantum meruit, unjust enrichment, and "breach of promise to nominate as beneficiary." The defendant filed an answer to the plaintiff's amended complaint and raised several special defenses. Relevant to this appeal, the defendant asserted, inter alia, that the plaintiff's causes of action were barred by the statute of limitations set forth in General Statutes § 45a-363[6] because the plaintiff did not commence this action within 120 days of receiving the return of claims.

---

[4] General Statutes § 45a-360 (c) provides: "If the fiduciary fails to reject, allow or pay the claim within ninety days from the date that it was presented to the fiduciary as provided by section 45a-358, the claimant may give notice to the fiduciary to act upon the claim as provided by subsection (a) of this section. If the fiduciary fails to reject, allow or pay the claim within thirty days from the date of such notice, the claim shall be deemed to have been rejected on the expiration of such thirty-day period."

[5] We note that, although the return of claims was dated July 9, 2020, records from the Probate Court reflect that the return of claims was filed with the court on July 10, 2020.

[6] General Statutes § 45a-363 provides in relevant part: "(a) No person who has presented a claim shall be entitled to commence suit unless and until

A jury trial was held over several days in September, 2022. In addition to his own testimony, the plaintiff presented the testimony of Gabrielle Duah, an expert in the rates for caregiving services; Jami Somero, his friend; and Jeffrey J. Martin, his father. The plaintiff testified, inter alia, that he had several conversations with the decedent wherein the decedent offered to pay the plaintiff for his caregiving services, offered him the property as compensation for his services, and stated that he would name the plaintiff as a beneficiary in his will.

In addition to his own testimony, the defendant presented the testimony of his siblings. The defendant also presented the testimony of Audrey Carson, a caregiver hired by the defendant and his siblings to provide assistance to the decedent. Finally, the defendant presented, during his case-in-chief, the testimony of Debra Olson, the defendant's wife, and Mark Longo, the plaintiff's stepfather. The plaintiff objected to the defendant presenting this testimonial evidence during his case-in-chief, arguing that it was impermissible "surrebuttal" evidence. The court overruled the plaintiff's objection and permitted the defendant's wife to testify so as not to delay the trial and found that the plaintiff was not unfairly surprised by the testimony of his stepfather.

After the close of evidence, the court instructed the jury as to each of the plaintiff's causes of action.[7] The

such claim has been rejected, in whole or in part, as provided in section 45a-360.

"(b) Unless a person whose claim has been rejected (1) commences suit within one hundred twenty days from the date of the rejection of his claim, in whole or in part . . . he shall be barred from asserting or recovering on such claim from the fiduciary, the estate of the decedent or any creditor or beneficiary of the estate, except for such part as has not been rejected. . . ."

[7] Before charging the jury on the elements of the plaintiff's causes of action, the court instructed the jury that, "[i]n this particular case, in order to meet his burden of proof, [the plaintiff] must prove each of his claims by a standard of proof known as clear and convincing evidence. Under Connecticut law, a claim that a decedent, here [the plaintiff's] grandfather, [the decedent], promised—promised to compensate a family member for

court then instructed the jury on the defendant's special defenses. Finally, the court instructed the jury on how to complete the jury interrogatories. Specifically, the court instructed the jury to make a finding as to each count of the plaintiff's operative complaint and then, if necessary, to make findings on the defendant's special defenses.

On September 19, 2022, the jury returned a verdict in favor of the defendant on each count of the plaintiff's operative complaint. The jury also determined that the defendant's statute of limitations defense applied. The plaintiff filed a timely motion to set aside the verdict pursuant to Practice Book § 16-35. The defendant filed an objection, and, on April 24, 2023, the court denied the plaintiff's motion and rendered judgment in accordance with the verdict. This appeal followed. Additional procedural history will be set forth as necessary.

I

The plaintiff first claims that the court improperly instructed the jury regarding the effect of the return of

caregiving services, and that is a serious claim. That's [the plaintiff's] allegation I should say. Therefore, the law applies a higher standard of proof to such a claim than is ordinarily applied in other civil cases. This, in this case, [the plaintiff] has the burden of proving each of his claims by clear and convincing evidence. This standard of proof also applies to any amount of damages [the plaintiff] may seek to prove. [The plaintiff] cannot meet the burden of proof of his claims by simply producing evidence which is slightly more persuasive than the evidence that is opposed to his claims. That amount of proof would meet the burden of proof under the preponderance of the evidence standards which is typical in most civil cases. Instead, in this case, [the plaintiff] must prove—must produce clear and convincing evidence to prove his claims. Clear and convincing evidence is evidence that is substantial and that unequivocally established each of the elements of [the plaintiff's] claims. Stated another way, clear and convincing evidence is evidence that establishes for you a very high probability that the facts asserted are true or—or that they exist. Not simply that the facts at issue are more probable than not. Finally, you may have heard in criminal cases that proof must be beyond a reasonable doubt. I must emphasize to you that this is not a criminal case, and you are not deciding criminal guilt or innocence. Therefore, the standard of beyond a reasonable doubt has no application in this case."

claims. Specifically, the plaintiff asserts, inter alia, that the court's instruction as to the defendant's statute of limitations defense caused the jury to find against the plaintiff on his five causes of action. The defendant responds that, because the jury returned a verdict in favor of the defendant on all five causes of action, the jury was not required to make any findings as to the defendant's special defenses and any purported error in the court's instruction was harmless. We agree with the defendant.

The following procedural history is relevant to our resolution of this claim. After the close of evidence, the court held a charging conference. The plaintiff's counsel objected to the court's draft instruction on the defendant's statute of limitations defense and argued, inter alia, that his "position is that the return of claims that seems to be the significant document by which the defendant is claiming that it notif[ied] the plaintiff of the rejection, our position is that that document in and of itself is invalid because it violates § 45a-360 (b)."[8] The court overruled the objection, stating that it understood the plaintiff's objection to be that the return of claims did not provide a reason for denying the plaintiff's claim. The court relied on *International Tool & Gauge Co.* v. *Borg*, 145 Conn. 644, 646, 145 A.2d 750 (1958), for the proposition that notice must be sufficiently unequivocal to place a claimant on notice that their claim has been denied.

The court, after instructing the jury on the plaintiff's causes of action, charged the jury on the defendant's statute of limitations defense as follows: "[The defendant] has raised defenses to [the plaintiff's] claims asserting that [the plaintiff] cannot prevail on his various claims because he did not bring suit on those claims

---

[8] General Statutes § 45a-360 (b) provides: "A notice rejecting a claim in whole or in part shall state the reasons therefor, but such statement shall not bar the raising of additional defenses to such claim subsequently."

within the time that is allowed by law. There are state statutes that specify how much time a person—how much time a person has to bring certain kinds of claims. These are called statutes of limitation. A person cannot recover on a claim that is brought after the time period that applies to a particular claim even if it is one day late. The defendant claims that the [statute] of limitations provided for under . . . § 45a-363 bars recovery under all of [the plaintiff's] claims since the action was not commenced within 120 days from the date of the rejection of [the plaintiff's] claim against [the decedent's] estate. [The defendant] contends that [the plaintiff's] claim for alleged caregiver services was denied on July 9, 2020,[9] and that [the plaintiff] received a copy of that denial on July 13, 2020. [The plaintiff] denies that he ever received a copy of the denial of his claim. It is undisputed that this action was filed with the court on December 24, 2020. If you find that [the defendant] has proven that [the plaintiff] did not file his claim within 120 days of being notified of his claim's denial by [the decedent's] estate, then you must find in favor of [the defendant] as to all of [the plaintiff's] claims." (Footnote added.)

Thereafter, the court instructed the jury on how to complete the jury verdict form and interrogatories. The court informed the jury that it "will have to answer, perhaps, nineteen questions in—in serial form," and then instructed the jury to begin with the first interrogatory, and then, depending on its answer, proceed pursuant to the instructions on the jury verdict form. By way of example, the court instructed: "Count one which is . . . the breach of expressed contract. If you find that there was—that there was a contract, then you have to answer some questions with respect to whether or not you think it was breached and whether or not there was any damage. If you find it was not—there was

---

[9] See footnote 5 of this opinion.

no breach, then you simply skip to the interrogatories dealing with the next count which is count two. I've set that all out in the instructions that are on your form, but it depends on how you answer that first question whether or not you answer the next four or five, we're only going to have you skip to what is interrogatory number five. Okay?" The court repeated similar instructions with respect to counts two through five of the plaintiff's operative complaint. The court then instructed in relevant part: "At interrogatory number sixteen, then you will consider the special defenses which are, again, the statute of limitations. You have to decide whether or not [the defendant] has met his burden there. You have to answer the first few questions before you get there . . . ."

The jury returned a verdict in favor of the defendant, finding that (1) the plaintiff and the decedent did not enter into an express oral contract for the decedent to compensate the plaintiff for providing caregiver services, (2) the plaintiff and the decedent did not enter into an implied-in-fact contract for the decedent to compensate the plaintiff for providing caregiver services, (3) the decedent did not promise to nominate the plaintiff as a beneficiary in his will, (4) the plaintiff is not entitled to recover under quantum meruit, and (5) the decedent was not unjustly enriched by the caregiver services the plaintiff provided him. With respect to the defendant's special defenses, interrogatory sixteen stated: "Do you find that [the plaintiff] did not file his complaint in this action within 120 days of the denial of [the plaintiff's claim against [the decedent's] estate by [the defendant]," to which the jury answered, "Yes." The jury did not make any findings on the additional special defenses raised by the defendant.

We now turn to our standard of review and relevant legal principles. "A jury instruction must be considered in its entirety, read as a whole, and judged by its total

effect rather than by its individual component parts. . . . [T]he test of a court's charge is not whether it is as accurate upon legal principles as the opinions of a court of last resort but whether it fairly presents the case to the jury in such a way that injustice is not done to either party under the established rules of law. . . . As long as [the instructions] are correct in law, adapted to the issues and sufficient for the guidance of the jury . . . we will not view the instructions as improper. . . . Therefore, [o]ur standard of review on this claim is whether it is reasonably probable that the jury was misled. . . . Furthermore, [n]ot every error is harmful. . . . [B]efore a party is entitled to a new trial . . . he or she has the burden of demonstrating that the error was harmful. . . . An instructional impropriety is harmful if it is likely that it affected the verdict." (Citation omitted; internal quotation marks omitted.) *Allen* v. *Shoppes at Buckland Hills, LLC*, 206 Conn. App. 284, 288–89, 259 A.3d 1227 (2021).

"The power of the trial court to submit proper interrogatories to the jury, to be answered when returning [its] verdict, does not depend upon the consent of the parties or the authority of statute law. In the absence of any mandatory enactment, it is within the reasonable discretion of the presiding judge to require or to refuse to require the jury to answer pertinent interrogatories, as the proper administration of justice may require. . . . The trial court has broad discretion to regulate the manner in which interrogatories are presented to the jury, as well as their form and content. . . . Moreover, [i]n order to establish reversible error, the defendant must prove both an abuse of discretion and a harm that resulted from such abuse. . . .

"We further note that jury interrogatories must be consistent with the pleadings and the evidence adduced at trial, so as not to mislead the jury. . . . The function of jury interrogatories is to provide a guide for the jury's

reasoning, and a written chronicle of that reasoning. . . . The purpose of jury interrogatories is to elicit a determination of material facts, to furnish the means of testing the correctness of the verdict rendered, and of ascertaining its extent." (Citations omitted; footnote omitted; internal quotation marks omitted.) *Wilkins* v. *Connecticut Childbirth & Women's Center*, 176 Conn. App. 420, 430–31, 171 A.3d 88 (2017).

On appeal, the plaintiff argues that the court improperly instructed the jury that, "[i]f you find that [the defendant] has proven that [the plaintiff] did not file his claim within 120 days of being notified of his claim's denial by [the decedent's] estate, then you must find in favor of [the defendant] as to all of [the plaintiff's] claims." The plaintiff contends, inter alia, that "[t]he jury, relying on the erroneous instruction concerning the effect of the return of claims, probably felt compelled to find in favor of the defendant on the substantive claims of the plaintiff."

We need not decide whether the court should have provided a more detailed instruction on the defendant's statute of limitations defense because, even if we assume it was error, it was harmless. The court instructed the jury to answer the interrogatories in the order in which they were presented on the jury verdict form. "[W]hen a jury has received an instruction, it is presumed to have followed such instruction unless the contrary appears." (Internal quotation marks omitted.) *Stratek Plastic Ltd.* v. *Ibar*, 145 Conn. App. 414, 419, 74 A.3d 577, cert. denied, 310 Conn. 937, 79 A.3d 890 (2013). Because the jury found that the plaintiff had failed to prove an essential element of each of the five causes of action prior to addressing the defendant's special defenses, the court's instruction on the defendant's statute of limitations defense, assuming it was erroneous, could not have confused or misled the jury. See, e.g., *Kos* v. *Lawrence + Memorial Hospital*, 334

Conn. 823, 848, 225 A.3d 261 (2020) (instructional error was neither misleading nor harmful because error did not affect verdict, which was premised on different issue).[10] Accordingly, we conclude that any error arising from the court's jury instructions was harmless and did not affect the verdict.

## II

We next address the plaintiff's claims that the court improperly admitted into evidence testimony regarding the fair rental value of the property and the effect of the plaintiff's claims on the defendant and the plaintiff's mother.

"The trial court's ruling on evidentiary matters will be overturned only upon a showing of a clear abuse of the court's discretion. . . . We will make every reasonable presumption in favor of upholding the trial court's ruling, and only upset it for a manifest abuse of discretion. . . . [Thus, our] review of such rulings is limited to the questions of whether the trial court correctly applied the law and reasonably could have reached the conclusion that it did. . . . To the extent [that] a trial court's admission of evidence is based on an interpretation of the Code of Evidence, our standard of review is plenary. For example, whether a challenged statement properly may be classified as hearsay and whether a hearsay exception properly is identified are legal questions demanding plenary review. . . . We review the trial court's decision to admit [or exclude] evidence, if premised on a correct view of the law, however, for an abuse of discretion. . . . Additionally, [b]efore a party is entitled to a new trial because of an erroneous evidentiary ruling, he or she has the burden of demonstrating

---

[10] We decline the plaintiff's invitation to speculate as to how and why the jury arrived at its verdict. See *Tisdale* v. *Riverside Cemetery Assn.*, 78 Conn. App. 250, 263, 826 A.2d 232 (law is clear that reviewing court will not speculate about jury's intentions), cert. denied, 266 Conn. 909, 832 A.2d 74 (2003).

that the error was harmful. . . . The harmless error standard in a civil case is whether the improper ruling would likely affect the result." (Internal quotation marks omitted.) *LM Ins. Corp.* v. *Connecticut Dismanteling, LLC*, 172 Conn. App. 622, 627–28, 161 A.3d 562 (2017).

A

The plaintiff's first evidentiary claim is that the defendant's testimony regarding the fair rental value of the property "constituted inadmissible hearsay." We disagree.

The following additional procedural history is relevant. At trial, the following colloquy occurred:

"[The Defendant's Counsel]: All right. So . . . in the past what, if any, efforts did you undertake to ascertain rental values for [the property]?

"[The Defendant]: Well, in December of 2019, my brother did an evaluation of the foundation of the house and found out it had a failing foundation. So, we decided to get some rent values because we thought, you know, my father was not doing that well at that time. So, we thought, perhaps, we would need to maybe rent the house, since we couldn't sell it because of the foundation. So, I went online and also talked to a realtor friend of mine just to see what the value of the house would be, if we had rented it. And it turned out to be, somewhere between $1000–$2000 a month.

"[The Plaintiff's Counsel]: Objection. We move to strike (indiscernible) that's hearsay. And it's also beyond the scope, or beyond the province that the lay witness can testify about the value of somebody else's property.

"The Court: Overruled."

The Connecticut Code of Evidence defines "hearsay" as "a statement, other than one made by the declarant while testifying at the proceeding, offered in evidence to establish the truth of the matter asserted." Conn. Code Evid. § 8-1 (3). Subject to certain exceptions, hearsay is inadmissible. See Conn. Code Evid. § 8-2. A "statement" is defined as "an oral or written assertion or . . . nonverbal conduct of a person, if it is intended by the person as an assertion." Conn. Code Evid. § 8-1 (1). "There are certain circumstances when, although the witness did not repeat the statements of another person, his or her testimony presented to the jury, by implication, the substance of another person's statements. . . . Under these circumstances, a witness has implied an out-of-court statement of another by testifying to the witness' own verbal or nonverbal response to an identifiable conversation." (Citation omitted; internal quotation marks omitted.) *Loiselle* v. *Browning & Browning Real Estate, LLC*, 147 Conn. App. 246, 257–58, 83 A.3d 608 (2013).

In the present case, the plaintiff has not demonstrated that the defendant's testimony that he "went online and also talked to a realtor friend" to ascertain the fair rental value of the property constituted hearsay. The defendant's counsel asked the defendant "what, if any efforts" the defendant undertook to determine the fair rental value of the property, and the defendant responded by describing his process for ascertaining the property's value and the conclusions he drew on the basis thereof. The plaintiff has not cited, nor has our review of the record revealed, any portion of the transcript where the defendant testified, in either substance or by implication, to any specific out-of-court statement made to him by his friend or that he discovered online. The court, therefore, properly concluded that the defendant's testimony regarding the fair rental value of the property was not hearsay.

The plaintiff contends that our Supreme Court's decision in *Urich* v. *Fish*, 261 Conn. 575, 804 A.2d 795 (2002), "applies squarely" to his case. We disagree. In *Urich*, the defendant offered during trial "a list that he had prepared of items that were missing from [a] boat upon delivery. The list was offered by the defendant both as an indicator of what items were missing and as evidence of their value. The plaintiff objected on the ground that the defendant had not provided a foundation for the value of the items, and the court sustained the objection, ruling that the list was admissible as a list of allegedly missing items but not as evidence of their value. After a foundation had been laid, however, as to the replacement cost of some of the items, primarily in the form of the amount actually paid by the defendant to replace them, the trial court admitted the exhibit in its entirety but with the limitation that the court would rely only on the valuations for which a foundation had been laid." *Urich* v. *Fish*, supra, 578. Despite this ruling, the court relied, in its calculation of damages, on the price quotes provided by the defendant irrespective of whether the defendant had laid a proper foundation for the quote. Id., 579–80. Our Supreme Court determined that the price quotes offered by the defendant that lacked a proper foundation met "the definition of hearsay because they were statements made outside of court by the suppliers and were offered by the defendant to establish that the prices quoted represented the true replacement cost of the items." Id., 583–84.

In the present case, the defendant neither sought to introduce into evidence an exhibit reflecting, nor an out-of-court statement suggesting, the estimated rental value of the property for the truth of the matter asserted. Rather, the defendant testified as to the procedure he undertook to ascertain the property's rental value and the conclusions he drew therefrom. Moreover, the defendant, in his capacity as executor of the decedent's

estate, was reasonably qualified to testify about the rental value of the property. See id., 581 ("[o]ur long settled rule is that a witness is permitted to testify about the value of goods with a proper foundation and when any reasonable qualifications of the witness to do so have been established"). Accordingly, the present case is factually distinguishable from *Urich*.[11]

We, therefore, conclude that the court did not abuse its discretion in admitting the defendant's testimony on the rental value of the property.

B

The plaintiff's second evidentiary claim is that the court improperly admitted "evidence of the emotional effect" of the plaintiff's claim against the decedent's estate on his relatives. Specifically, the plaintiff contends that the testimony of the defendant and Margaret Longo, the plaintiff's mother, was irrelevant.[12] We are not persuaded.

The following procedural history is relevant to our resolution of this claim. At trial, the following colloquy

---

[11] The plaintiff also maintains that the court improperly admitted the defendant's testimony regarding the fair rental value of the property because the testimony constituted inadmissible lay witness testimony. Typically, a witness cannot offer an opinion as to the value of a property unless they own the property to which their testimony relates. See Conn. Code Evid. § 7-1, commentary. Our courts, however, have allowed a witness to present valuation testimony if the court finds the witness qualified to offer such testimony. See, e.g., *O'Connor* v. *Dory Corp.*, 174 Conn. 65, 70, 381 A.2d 559 (1977) (court admitted former property owner's testimony regarding property value because "[r]easonable qualifications were established for the admission of the witness' testimony as to value and the objection raised concerning his former ownership of the property went to its weight rather than its admissibility"). In the present case, because the defendant in his capacity of executor of the decedent's estate had experience with the oversight and management of the property prior to its sale, he was reasonably qualified to provide testimony on the rental value of the property.

[12] Although the other children of the decedent testified as to their reaction to the plaintiff's claim against the estate, the plaintiff's claim on appeal is limited to challenging the testimony of the defendant and the plaintiff's mother.

occurred between the defendant's counsel and the defendant:

"[The Defendant's Counsel]: Okay. Now, as you heard from [the plaintiff's] testimony, he claims he's owed some figure. I don't know if we've heard an amount but it's a figure of maybe, in excess of a half a million dollars, for caregiver services that he's provided to your father. You understand that to be the claim. Right?

"[The Defendant]: Yes.

"[The Defendant's Counsel]: And when you heard [the plaintiff] was making this claim, what thoughts came into your mind?

"[The Defendant]: Nobody—

"[The Plaintiff's Counsel]: Objection. Relevance.

"The Court: Overruled.

"[The Defendant]: Nobody was really expecting it. So, I guess, you know, we were all kind of shocked because, you know, he certainly, did some things around the house. But he lived there, didn't pay rent so, we kind of thought that that's, you know, was payment for him staying there."

Additionally, the following colloquy occurred between the defendant's counsel and the plaintiff's mother:

"[The Defendant's Counsel]: When you heard that your son was making this claim, what thoughts did you have?

"[The Plaintiff's Counsel]: Objection. Relevance.

"The Court: Overruled.

"[The Witness]: I was appalled. I did not agree with it at all.

"[The Defendant's Counsel]: And what did you not agree with?

"[The Witness]: The fact that he was bringing suit against me, and my siblings. And I always thought he had a roof over his head, a very nice room, a bathroom, a garage of his own and he helped my dad with things that any good grandson would help with and my dad, in turn, gave him free rent. And I didn't . . . I didn't think the suit was warranted at all."

The following legal principles guide our resolution of this claim. "Section 4-1 of the Connecticut Code of Evidence defines relevant evidence as evidence having any tendency to make the existence of any fact that is material to the determination of the proceeding more probable or less probable than it would be without the evidence. To determine whether a fact is material or consequential, it is necessary to examine the issues in the case, as defined by the underlying substantive law, the pleadings, applicable pretrial orders, and events that develop during the trial. Thus, the relevance of an offer of evidence must be assessed against the elements of the cause of action, crime, or defenses at issue in the trial. The connection to an element need not be direct, so long as it exists." (Internal quotation marks omitted.) *McCrea* v. *Cumberland Farms, Inc.*, 204 Conn. App. 796, 804, 255 A.3d 871, cert. denied, 338 Conn. 901, 258 A.3d 676 (2021). "Once a witness has testified to certain facts . . . his credibility is a fact that is of consequence to [or material to] the determination of the action, and evidence relating to his credibility is therefore relevant . . . ." (Internal quotation marks omitted.) Id., 805.

We are not persuaded that the court improperly allowed the testimony of the defendant and the plaintiff's mother regarding their reactions to learning about the plaintiff's claim against the decedent's estate. The

plaintiff brought causes of action sounding in breach of express oral contract, breach of implied-in-fact contract, unjust enrichment, quantum meruit, and "breach of promise to nominate as beneficiary." In support of these claims, the plaintiff testified at trial that he would have yearly discussions with the decedent during which the decedent promised to compensate the plaintiff for providing him with caregiving services. The court reasonably could have determined that the testimony provided by the defendant and the plaintiff's mother regarding their reactions to the plaintiff's claim against the decedent's estate was relevant because it was offered to assist the jury in determining whether it found credible the plaintiff's testimony that the decedent promised to compensate the plaintiff for providing caregiver services.

Accordingly, the court did not abuse its discretion by allowing the defendant and the plaintiff's mother to testify to their reactions to the plaintiff's claim against the decedent's estate.

## III

The plaintiff's final claim on appeal is that the trial court improperly allowed the defendant to present the testimony of two surrebuttal witnesses during his case-in-chief. The plaintiff argues that the court erred because there was no good cause for allowing the defendant's surrebuttal witnesses to testify out of order. We disagree.

The following additional procedural history is relevant to our resolution of this claim. During trial, the defendant sought to call as witnesses during his case-in-chief the defendant's wife and the plaintiff's stepfather. The plaintiff's counsel objected to the defendant's wife testifying because (1) she was not listed as a witness on the joint trial management report, (2) the plaintiff did not have questions prepared for her, and (3)

allowing her to testify during the defendant's case-in-chief would prejudice the plaintiff. The court overruled counsel's objection and stated: "I'm going to allow [the defendant's counsel] to take her out of order, because she would be, obviously, an appropriate rebuttal witness. And I don't see any reason why to—to delay her testimony."[13]

The plaintiff's counsel also objected to the plaintiff's stepfather testifying during the defendant's case-in-chief on the basis that it was premature surrebuttal

---

[13] The following colloquy occurred prior to the testimony of the defendant's wife:

"[The Plaintiff's Counsel]: Your Honor, we would object, because I don't think [the defendant's wife is] listed on the joint trial management report.

"The Court: Ah. . . .

"[The Plaintiff's Counsel]: We have a specific list of witnesses. And I don't recall seeing her.

"The Court: I—my copy of the report is in the—in chambers, but that should be an objective yes or no. Is [the defendant's wife] listed or not?

"[The Defendant's Counsel]: She was not. This is a rebuttal [witness] in connection with the testimony of [the plaintiff] regarding what, if anything, a few family members did, with respect to helping [the decedent]. The [plaintiff's] testimony was no assistance. The testimony was the—whatever little things that [the defendant's wife] did and she has direct knowledge concerning what she did, as well. So, it—it wasn't intended to be a witness.

"The Court: Attorney Amato.

"[The Plaintiff's Counsel]: Well, I don't think that now is an appropriate time to be doing rebuttal for the defendant. Typically, the plaintiff does rebuttal and the defendant would do surrebuttal and that would only come after the plaintiff does rebuttal. So, in other words, under my interpretation—

"The Court: All right. Wait.

"[The Plaintiff's Counsel]:—it's all—

"The Court: And it—I understand the procedural issue. Is there any substantive issue, which is to say why shouldn't we just skip the formalities and let [the defendant's wife] testify, because she would be able to testify in rebuttal because, if—she's clearly rebutting what the plaintiff was saying with respect to what may or may not have been done—

"[The Plaintiff's Counsel]: I—

"The Court: —by the plaintiff and the children.

"[The Plaintiff's Counsel]: Apart from the—

"The Court: So why shouldn't we just skip to what we know—all know she's going to—her—her ability to testify?

"[The Plaintiff's Counsel]: Well, apart from the fact that we haven't had a chance to prepare anything for her, I think that's kind of—

"The Court: All right.

evidence. The following colloquy occurred between the court and the plaintiff's counsel:

"The Court: If I—how are you prejudiced by this? I mean, I think you agree that he can present this witness on surrebuttal because he's contradicting testimony that [the plaintiff] has provided. So other than the procedural issue and timing, what is your prejudice? Testimony is coming in either way, right?

"[The Plaintiff's Counsel]: I don't think that's correct, Judge, no.

"The Court: Why is that not correct?

"[The Plaintiff's Counsel]: Because if he brings him in in the normal order—let's say, the defendant finishes his case-in-chief. Now the plaintiff goes on and does his rebuttal, then if he wants to bring in a witness on surrebuttal to rebut what the plaintiff brought in on rebuttal, that's fine. But we don't know that this person—this other witness, this undisclosed witness is going to rebut the rebuttal evidence. We don't know that. What he's trying to do is get an extra crack at trying to defend or contradict or challenge what the plaintiff said on direct examination. An undisclosed surrebuttal witness is not the way to do it."

The court overruled the plaintiff's objection and stated: "Okay. Well, I mean, I'm going to allow the witness. I think he's—it's not unfair surprise. There's clearly been a lot of testimony about this. It's a family dispute. The idea that family members on either side of this dispute might be testifying about relevant facts. It shouldn't come as a surprise to anyone. I'm going to allow him to present that testimony out of order."

---

"[The Plaintiff's Counsel]:—prejudicial.

"The Court: I'm going to allow [the defendant's counsel] to take her out of order . . . ."

We now turn to our standard of review and relevant legal principles. Practice Book § 15-5 (a) provides in relevant part: "Unless the judicial authority for cause permits otherwise, the parties shall proceed with the trial and argument in the following order: (1) The plaintiff shall present a case-in-chief. (2) The defendant may present a case-in-chief. (3) The plaintiff and the defendant may present rebuttal evidence in successive rebuttals, as required. The judicial authority for cause may permit a party to present evidence not of a rebuttal nature, and if the plaintiff is permitted to present further evidence in chief, the defendant may respond with further evidence in chief. . . ." "[W]hen considering whether there was cause for a court to [deviate from the procedures] prescribed in . . . § 15-5 (a), we review the decision of the court under the abuse of discretion standard." (Internal quotation marks omitted.) *Moutinho* v. *500 North Avenue, LLC*, 191 Conn. App. 608, 625–26, 216 A.3d 667, cert. denied, 333 Conn. 928, 218 A.3d 68 (2019).

"It is well settled that the admission of rebuttal evidence lies within the sound discretion of the trial court. . . . Our standard of review of the [plaintiff's] claim is that of whether the court abused its discretion in allowing this . . . testimony. . . . Discretion means a legal discretion, to be exercised in conformity with the spirit of the law and in a manner to subserve and not to impede or defeat the ends of substantial justice. . . . It goes without saying that the term abuse of discretion . . . means that the ruling appears to have been made on untenable grounds. . . . In determining whether the trial court has abused its discretion, we must make every reasonable presumption in favor of the correctness of its action." (Citation omitted; internal quotation marks omitted.) *O & G Industries, Inc.* v. *American Home Assurance Co.*, 204 Conn. App. 614, 642–43, 254 A.3d 955 (2021).

As an initial matter, it is unclear to us why the testimony at issue would be considered surrebuttal evidence. It was offered to directly refute the plaintiff's testimony in his case-in-chief. It is typical for a defendant to offer in his case-in-chief evidence directly refuting evidence offered by the plaintiff, including the testimony of witnesses who directly contradict the plaintiff's testimony. See id., 645 ("[R]ebuttal evidence is that which refutes the evidence [already] presented . . . rather than that which merely bolsters one's case. . . . [A] general contradiction of the testimony given by [a party] is considered permissible rebuttal testimony." (Citation omitted; internal quotation marks omitted.)). Nevertheless, the plaintiff contends, inter alia, that "the trial court failed to expressly solicit and find good cause" for allowing the defendant to present what the plaintiff calls "surrebuttal evidence" during his case-in-chief.

Regardless of the descriptor attached to the evidence, we conclude that the court did not abuse its discretion by allowing the defendant to present the testimony of the defendant's wife and the plaintiff's stepfather during his case-in-chief. The court stated that it was allowing the evidence, first, because the testimony did not unfairly surprise the plaintiff and, second, so as not to delay the trial. Considering that the court's decision is to be afforded every reasonable presumption of correctness, we conclude that the court's findings reasonably justified its decision to allow the defendant to present the evidence during his case-in-chief. See, e.g., *de Repentigny* v. *de Repentigny*, 121 Conn. App. 451, 456, 995 A.2d 117 (2010) (trial court's decision denying plaintiff's request to present oral closing argument on basis that it would prolong trial justified deviating from Practice Book § 15-5 and did not constitute abuse of discretion).[14] Accordingly, the plaintiff has not demonstrated

---

[14] The plaintiff's claim, if accepted, also would lead to the bizarre circumstance that the defendant would be precluded from presenting evidence

that the court abused its discretion in allowing the defendant to present rebuttal evidence during his case-in-chief.

The judgment is affirmed.

In this opinion the other judges concurred.

---

that contradicted the testimony the plaintiff already gave if the plaintiff chose not to present a rebuttal case. That simply is not how the rules of evidence and trial procedure work.